COMMONWEALTH vs. JOHNNY E. BLAKE.

Hampden. October 6, 1992. - December 16, 1992.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Search and Seizure*, Affidavit, Probable cause, Securing of premises. *Probable Cause. Constitutional Law*, Search and seizure.

A criminal defendant's challenge to certain statements made in the affidavit in support of the issuance of a search warrant made no substantial showing of intentional falsity or reckless disregard for the truth, such as would entitle him to an evidentiary hearing under principles stated in *Franks* v. *Delaware*, 438 U. S. 154 (1978). [825-826]

The affidavit in support of the issuance of a warrant for the search of residential premises, and seizure of drugs believed to be thereon, contained sufficient information to establish probable cause under tests mandated by art. 14 of the Massachusetts Declaration of Rights. [826-829]

Entry by police on residential premises prior to the issuance of a search warrant, in order to prevent destruction or removal of evidence, provided no basis for suppression of evidence seized in accordance with the warrant, where the warrant was supported by an affidavit based wholly on evidence independent of the police entry. [829-830]

INDICTMENTS found and returned in the Superior Court Department on November 17, 1989.

A pretrial motion to suppress evidence was heard by *Raymond R. Cross*, J., and the cases were tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael Malkovich* for the defendant.

*Mark G. Mastroianni*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was found guilty by a jury of trafficking in cocaine, possession of cocaine with intent to distribute, and possession of marihuana with intent to dis-

tribute. On appeal he challenges the denial of his pretrial motion to suppress evidence seized from his house pursuant to a warrant. He also challenges the judge's refusal to conduct an evidentiary hearing concerning allegedly false or misleading statements contained in the search warrant affidavit. See *Franks* v. *Delaware*, 438 U.S. 154 (1978). We transferred the case here on our own motion and now affirm.

We summarize the relevant facts from the judge's findings. On November 1, 1989, at approximately 3:30 P.M., the western Massachusetts narcotic task force arrested the defendant after he attempted to sell cocaine to one Estaban Mendoza, a task force operative. Mendoza, who had worked for Federal and State authorities for fourteen years, had set up the purchase of nine ounces[1] of cocaine from the defendant according to their prearrangement. Mendoza met the defendant at a gasoline station on Bay Street in Springfield. There, the defendant left a paper bag containing cocaine on the front seat of his automobile. Mendoza examined the cocaine, signaled into a hidden microphone, and the agents moved in and arrested the defendant.

Following the defendant's arrest, agents went to the defendant's residence at 65 Humbert Street, entered, and secured the premises. Officer Richard Latta, who was at the gasoline station at the time of the arrest, applied for a search warrant for the defendant's premises. A magistrate of the Springfield District Court authorized the search warrant at approximately 5:18 P.M. When the officers at the defendant's apartment received word that the search warrant had been issued, they began a search and seized cocaine, marihuana, a scale, a handgun, ammunition, and $2,915 in cash.[2]

---

[1] The judge in his findings stated that Mendoza had arranged a purchase of nine "grams" of cocaine from the defendant. However, the only evidence introduced at the hearing indicates that the quantity was nine ounces of cocaine.

[2] The defendant does not argue that he is entitled to any relief on appeal because the warrant was apparently not in the possession of the officers at the scene when the search began.

1. *Franks hearing.* The defendant, citing *Franks* v. *Delaware,* 438 U.S. 154 (1978), claims that he was entitled to a hearing to challenge two false and misleading statements contained in Officer Latta's affidavit in support of the issuance of the warrant.[3] As proof, the defendant contrasts the affidavit with the police report of another officer involved in the arrest.[4]

Under *Franks,* a hearing is constitutionally required if the defendant makes a substantial preliminary showing that: (1) the affiant made a false statement, either knowingly or intentionally, or with reckless disregard for its truth, and (2) at least in the case of reckless falsehood, the misstatement is

---

[3]The defendant claims that Officer Latta used the words "directly" and "displayed" in the affidavit improperly to suggest a connection between the drugs seized and the defendant's house. Latta stated in the affidavit:

> "Surveillance officers were sent to the area of Peer and Humbert St. and obsearved a white nisson maxima leave the address of 65 Humbert St. and drive *directly* to the Citco station. . . . At this time Blake *displayed* a white powdery substance purported to be nine ounces of cocaine." (Emphasis added.)

[4]The accompanying officer, State Trooper James J. Fitzgibbons, in his report states:

> "At approximately 3:25pm, T/A Latta advised the other surveillance units that a white Nissan Maxima with BLAKE operating was travelling from 65 Humbert Street headed towards Bay Street . . . . At approximately 3:30pm, Officers observed a newer model, white Nissan Maxima, . . . enter the driveway at the Citgo station. The vehicle remained at the station for about ten minutes then drove out and was observed driving around the area.

> "At about 3:45pm, SB17-0010 entered the parking lot to the Citgo station and parked its vehicle. BLAKE arrived shortly thereafter and pulled up to a gas pump. SB17-0010 . . . walked over to BLAKE and the two engaged in conversation. The two then walked towards the attendants booth at which time BLAKE told SB17-0010 that the cocaine was on the front seat of his car. SB17-0010 was told to go check it out and if it was to its liking then it should leave the money in the car and walk off with the cocaine. SB17-0010 agreed and walked back towards the car. BLAKE continued forward and went inside the attendants booth.

> "Once SB17-0010 saw the cocaine in the car, a signal was given to investigating Officers at which time Officers moved in and placed BLAKE under arrest . . . ."

necessary to the existence of probable cause. *Commonwealth v. Ramos*, 402 Mass. 209, 215 (1988). *Commonwealth v. Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 767-768 (1981). *Franks* v. *Delaware, supra.* The events described in the police report do not suggest that Officer Latta's statements were misleading.[5] The defendant offers no other evidence, by affidavit or otherwise, that the warrant affidavit was false or misleading. Such a challenge does not rise to the level of a substantial preliminary showing of intentional falsity or reckless disregard for the truth in the affidavit. *Commonwealth v. Ramos, supra. Commonwealth v. Douzanis*, 384 Mass. 434, 439 (1981).

2. *Probable cause.* The judge ruled that the information contained in Latta's affidavit accompanying the search warrant application for the defendant's house was "legally sufficient to establish probable cause that the evidence sought to be seized would be found at the particular location at the time of the search." We agree.

Under art. 14 of the Massachusetts Declaration of Rights, a magistrate must determine that probable cause exists before issuing a search warrant. *Commonwealth v. Santana*, 411 Mass. 661, 663 (1992). *Commonwealth v. Upton*, 394 Mass. 363, 370 (1985). Where information from a confidential informant is relied on to supply probable cause to arrest and to search, art. 14 requires that the affidavit apprise the magistrate of some facts and circumstances showing both (1) the basis of the informant's knowledge, and (2) the credibility of the informant or the reliability of his information. *Commonwealth v. Cast*, 407 Mass. 891, 896 (1990). *Commonwealth v. Ramos, supra* at 212. See *Spinelli* v. *United States*, 393 U.S. 410, 414-415 (1969); *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964). While each prong of the *Aguilar-Spinelli* standard presents a separate inquiry, independent

---

[5]Since the defendant left his house at 3:25 P.M., proceeded in the direction of the gasoline station, and arrived at 3:30 P.M., use of the word "directly," was not misleading. In addition, since the defendant told the buyer that the cocaine was on the front seat of his automobile and that he should inspect it, the use of the word "displayed" was not misleading.

police corroboration of the informant's detailed tip can compensate for deficiencies in either or both prongs of the standard and satisfy the probable cause requirement under art. 14. *Commonwealth* v. *Cast, supra. Commonwealth* v. *Upton, supra* at 375-376. Furthermore, the affidavit should be read as a whole, not parsed, severed, and subjected to hypercritical analysis. *United States* v. *Ventresca,* 380 U.S. 102, 109 (1965). *Commonwealth* v. *Ramos, supra* at 213.

Even if we assume that the affidavit in question, as set out in the margin,[6] contains insufficient information to establish

---

[6]"During the late part of 1986 I became aware of an individual named Johnny through a reliable and confidential informant whose information directly resulted in the arrest and successful prosecution of the defendants in the case of Commonwealth v. Bailey. This information was that Johnny was one of the primary suppliers of cocaine to the You and I Convenience Store on Wilbraham Rd. in the City of Springfield, and he lived at 38-40 Carlisle St. and sometime drove a maroon Volvo. My informant told me that Johnny maintains a extremely low profile while engaged in these activities. Shortly after this information was received Off. J. Griffin, my partner at the time provided me with a Massachusetts motor vehicle listing of a 1971 Datsun 510 color red [Massachusetts registration] 954 JGE. This listing was registered to Johnny E. Blake of 40 Carlisle St. Springfield, Ma. during subsequent months I observed Blake enter and exit the You and I Convenience Store on many occasions.

"Recently I became acquainted with another confidential informant hereinafter referred to as HAR-I-72 who stated that it had knowledge of an individual known as Johnny Blake who deals large amounts of cocaine from his apartment at 65 Humbert St in the City of Springfield. HAR-I-72 stated that Blake owns three expensive automobiles, a late model 700 series BMW, a maroon Volvo, and a white Maxima, and has no visible means of support. HAR-I-72 also stated that Blake has a girlfriend . . . . Through continued investigation it was determined that [his girlfriend] lives at a housing project at the corner of Maynard and Shattuck Street in the City of Springfield, and the 1988 white Maxima is continuously parked in the driveway, bearing a Massachusetts registration in the name of [his girlfriend and another person, and the address listed was] 65 Humbert St. Springfield, Ma.

"On Tuesday, October 31, 1989 this officer and Special Agent R. Savini of the Immigration and Naturalization Service contacted a highly reliable cooperating individual hereinafter referred to as SB-1710010 to go to 65 Humbert St. Springfield, Ma. and speak to Johnny Blake in an attempt to arrange a delivery of cocaine the following day. At about 5:45 P.M. SB-170010 went to 65 Humbert St. with surveillance officers

the informants' bases of knowledge and veracity, the subsequent police investigation corroborated the informants' statements. Informant SB-170010, later identified as Mendoza, set up a controlled drug purchase from the defendant.[7] By agreeing to sell cocaine to Mendoza the defendant corroborated the information supplied previously by the other informants. Thus, the information from Mendoza and the details of the controlled drug transaction cured any defect, if any existed, under the *Aguilar-Spinelli* standard.

After Mendoza met with the defendant at his house a drug buy was scheduled for the next day, and the police were provided with a telephone and beeper number that the defendant had given Mendoza. The agents traced the telephone number to the defendant. The next day, the controlled drug purchase unfolded in the same manner as Mendoza had described it. Mendoza telephoned the defendant, the defendant met Mendoza, and brought nine ounces of cocaine as planned. The defendant's involvement in the monitored drug purchase corroborated the details of the warrant affidavit. See *Commonwealth* v. *Benlien*, 27 Mass. App. Ct. 834, 838 (1989) (account of controlled buy repaired any weakness in

---

watching. After a short time SB-170010 returned to a prearranged meeting point and explained that Johnny Blake had told him that he had 25 ounces of cocaine on hand and could deliver 9 ounces of cocaine the following day to SB-170010 for a negotiated price of $9,000.00. In order to formalize the agreement Blake provided a telephone number to SB-170010 so a follow up call could be placed the next day. SB-170010 handed the paper to S/A Savini and the telephone number . . . and beeper number . . . was written on it. A check with the New England Telephone Company showed a service installation date of February 1989 in the name of Johnny E. Blake to 65 Humbert St. Springfield, Ma.

"On Wednesday, November 1, 1989 at about 3:15 P.M. SB-170010 called Blake and arrainged for the delivery of the nine ounces of cocaine to the Citco gas station Bay St. in the city of Springfield. Surveillance officers were sent to the area of peer and Humbert St. and observed a white nisson maxima leave the address at 65 Humbert St. and drive directly to the Citco gas station. At that time SB-170010 was sent into the station to meet Blake. At this time Blake displayed a white powdery substance purported to be nine ounces of cocaine. At this time Officers moved in and effected an arrest of Blake."

[7]Mendoza testified at the hearing on the motion to suppress.

showing of reliability and lent strength generally to submission to magistrate).

The defendant's argument, that the affidavit does not establish a sufficient nexus between the controlled drug buy and the defendant's house, is similarly deficient. The second informant stated that the defendant was selling large amounts of drugs out of his apartment. Then, Officer Latta arranged for Mendoza to go to the defendant's residence and set up a drug purchase. There, the defendant told Mendoza that he had twenty-five ounces of cocaine "on hand," and that he could deliver nine ounces of cocaine the following day. The defendant gave Mendoza a beeper number and a telephone number that was listed under the defendant's name at his apartment. Mendoza telephoned the defendant at that number to carry out the purchase at 3:15 P.M. the next day. Shortly thereafter, agents watched the defendant leave the residence and drive to the gasoline station where the drug buy was to take place. To argue that these facts are insufficient to permit the issuing magistrate to determine whether the drugs could reasonably be expected to be located in the defendant's apartment borders on the frivolous. *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328 (1980).

3. *Securing the premises.* The defendant next argues that the agents, by forcibly entering and securing the defendant's residence while awaiting the issuance of a search warrant, violated the defendant's rights under the Fourth Amendment to the United States Constitution and under art. 14, and, thus, all evidence seized from the residence should have been suppressed. We disagree.

Securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of the dwelling or its contents. *Segura* v. *United States*, 468 U.S. 796, 810 (1984).[8] Police officers may secure an area to

---

[8]"The sanctity of the home is not to be disputed. But the home is sacred in Fourth Amendment terms not primarily because of the occupants' *possessory* interests in the premises, but because of their *privacy* interests in the activities that take place within. '[T]he Fourth Amendment protects

be searched before a warrant is procured as long as the search does not commence before .issuance of the warrant. *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990), and cases cited. Even assuming its illegality, the entry would not be a basis to suppress evidence subsequently obtained unless there is a showing that the evidence sought to be suppressed is an exploitation of the prior illegality. *Commonwealth* v. *Frodyma,* 393 Mass. 438, 442 (1984), and cases cited. "Whether the initial entry was illegal or not is irrelevant to the admissibility of the challenged evidence [if there is] an independent source for the warrant under which the evidence was seized." *Segura* v. *United States, supra* at 813-814.

The judge found that the agents entered and secured the defendant's apartment after the arrest at 3:30 P.M., and did not search for evidence until the warrant was issued. The affidavit in support of the warrant was based wholly on evidence independent of the entry into the apartment. See note 6, *supra.* In sum, we hold that the judge properly denied the defendant's request for a *Franks*-type hearing; that there was probable cause to search the defendant's home; and that entry on the premises prior to the issuance of the warrant did not provide a basis for suppressing the evidence seized in accordance with the warrant.

*Judgments affirmed.*

---

people, not places.' . . . Therefore, the heightened protection we accord privacy interests is simply not implicated where a *seizure* of premises, not a search, is at issue." (Emphasis supplied and citations omitted.) *Segura* v. *United States,* 468 U.S. 796, 810 (1984).