COMMONWEALTH *vs.* JAMES M. VORIS.

No. 94-P-55.

Middlesex. December 9, 1994. - April 7, 1995.

Present: PERRETTA, DREBEN, & GREENBERG, JJ.

*Probable Cause. Constitutional Law,* Search and seizure, Probable cause.
*Search and Seizure,* Affidavit, Probable cause, Exigent circumstances.
*Practice, Criminal,* Disclosure of identity of informer.

An affidavit in support of a search warrant provided sufficient probable
cause for the warrant to issue where the basis of knowledge of the con-
fidential informer was demonstrated by an allegation of his firsthand
knowledge coupled with specific detailed facts about the transaction
and the informant's veracity was established by independent police cor-
roboration. [379-380]

Probable cause supported police officers' securing, without searching, a
certain dwelling for an hour and one-half period while a search warrant
was applied for and obtained. [380-381]

At a criminal trial, the defendant did not make an adequate threshold
demonstration that police officers intentionally or recklessly made mis-
statements of fact in an affidavit in support of a search warrant, and
the judge properly declined to conduct an in camera preliminary hear-
ing regarding the statements of the officers. [382-383]

INDICTMENTS found and returned in the Superior Court
Department on June 20, 1991.

After pretrial motions were heard by *Catherine A. White,*
J., the cases were heard by *Paul A. Chernoff,* J.

*John C. McBride* for the defendant.

*James D. Takacs,* Assistant District Attorney, for the
Commonwealth.

GREENBERG, J. Convicted by a Superior Court jury of pos-
session of hashish with intent to distribute, possession of ma-
rihuana with intent to distribute, and unlawful cultivation of
marihuana, the defendant appeals. Police officers seized the
incriminating contraband, bank books, cash, a safe deposit
vault key, and smoking pipes in the course of a search of the

defendant's house, which they conducted under authority of a search warrant. The first ground of the appeal is that the search warrant issued upon an affidavit that failed to articulate sufficient probable cause. There is a second related point involving the impoundment of the house before the police could obtain a search warrant. A final issue raised by the defendant involves the denial of a so-called *Amral* hearing at which the defendant sought to challenge the truth of the affidavit that underlaid the search warrant.

1. *Sufficiency of the affidavit.* Joseph Deignan, a police detective of Watertown, furnished the supporting affidavit. The following is a summary of its contents. Investigation of the defendant was stimulated by a tip from a first-time informer who spoke over the telephone with Deignan's immediate supervisor, Lieutenant John D. Jackson. The informer, sometime in September of 1990, stated that "a white male in his thirties, . . . a musician," works out of his house at 142 North Beacon Street, Watertown, and was "selling large quantities of marihuana" and that he had "previously purchased marihuana from [the defendant]" at the same location. With this information, Jackson verified that the defendant owned the home and fit the description given by the informant.

There the matter might have rested had it not been for two serendipitous events. On September 29, 1990, Detective Deignan was involved in a foot chase of individuals thought to have committed an unrelated crime. Deignan was notified that a suspect fitting the description of one of the perpetrators had been spotted directly in front of the defendant's house. Deignan spoke with an individual in front of 142 North Beacon Street, Michael Catino, who claimed to be visiting the defendant. Catino "reeked" of marihuana, and folded in his pocket was a case containing over $2,500. Deignan went with Catino to the defendant's house and the defendant confirmed that Catino was, in fact, a visitor. (No arrests were made as Catino was not identified as a suspect in the unrelated crime.)

Shortly thereafter, Deignan initiated a surveillance of 142 North Beacon Street. That surveillance, conducted over four nights centered around the beginning of October, included observations of more than twenty-five persons entering the house, the majority of whom stayed for short (five to twenty-five-minute) visits. Based on checks of the registrations of their vehicles, Detective Deignan was able to ascertain that two of the callers had criminal records for violations of the controlled substances statute, and he named the two persons in his affidavit.

Finally, on October 4, 1990, Deignan saw a vehicle operated by Roland J. Mellone pull up outside 142 North Beacon Street. Mellone parked on the wrong side of the street and entered the house. Within fifteen minutes he reentered his car, pulled across the midline of the street, and nearly caused a three-car accident. When he was stopped by police, a search of his person turned up a significant quantity of hashish, two digital beepers, and three individual glassine bags of marihuana. At the station house, Mellone, after receiving his Miranda warnings, admitted to Lieutenant Jackson that he had purchased the hashish at 142 North Beacon Street — although he said it was purchased from an unknown party outside the house. No mention was made by Mellone that he went inside the house, as Detective Deignan had stated in his affidavit.

Whether the facts set forth in the affidavit added up to probable cause to support the search involves application of the familiar principles expressed in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969), as further explicated in the context of a Massachusetts setting in *Commonwealth* v. *Upton*, 394 Mass. 363, 374-376 (1985).

What the informer described contained such elements of suggestive detail of a first-hand character (see *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 497 [1984]) as would provoke a person reasonably to apprehend that there might be drugs on the premises. The statement of the informer that he had obtained drugs from "a musician" in the

specific apartment allows a clear inference of personal obser-
vation. *Commonwealth* v. *Parapar*, 404 Mass. 319, 322
(1989). The basis of knowledge test was met by an allegation
of firsthand knowledge coupled, with specific and detailed
facts about the transaction. *Commonwealth* v. *Atchue*, 393
Mass. 343, 348 (1984).

As to the "veracity" prong of the Aguilar-Spinelli test, it is
true that there is no indication that this informant ever pro-
vided information to the police about unlawful drug sales.
But that deficiency was overcome by independent police cor-
roboration that added to the informant's general credibility.
*Commonwealth* v. *Carrasco*, 405 Mass. 316, 321-322 (1989)
(first-time informant satisfied "veracity" prong by indepen-
dent police check of detailed information provided by the
informant).

Here, of course, the material that the informer had sup-
plied was reinforced by two coincidental events and an exten-
sive police investigation. *Commonwealth* v. *Richardson*, 37
Mass. App. Ct. 482, 485-486 (1994). Further, the admission
by Mellone that he himself committed a crime by purchasing
hashish near the defendant's house carries its own indicia of
reliability. See *Commonwealth* v. *Parapar*, 404 Mass. at
322-323.

We conclude that the affidavit was sufficient to establish
probable cause and was, therefore, a lawful basis for issuance
of a search warrant.

2. *Impoundment of 142 North Beacon Street.* Based upon
the information gathered after the stop of Catino five days
earlier and the arrest of Mellone an hour or so earlier, Lieu-
tenant Jackson authorized Deignan and other officers to im-
pound the house at 142 North Beacon Street around 7:45
P.M. until a search warrant could be obtained. In doing so,
Jackson relied upon the advice of an assistant district attor-
ney assigned to round-the-clock emergency duty. Within an
hour the officers secured the house.[1] Deignan applied for and

---

[1]The motion judge found that the police knocked, explained that they
were securing the premises, and "conducted a sweep but found no evi-
dence." The defendant stated that the initial sweep involved bringing all

received a search warrant, which was executed approximately ninety minutes later.

It is settled by the recent cases that "[s]ecuring a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of the dwelling or its contents. *Segura* v. *United States*, 468 U.S. 796, 810 (1984). Police officers may secure an area to be searched before a warrant is procured as long as the search does not commence before issuance of the warrant. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited." *Commonwealth* v. *Blake*, 413 Mass. 823, 829-830 (1992) (footnote omitted).[2] See also *Commonwealth* v. *Hall*, 366 Mass. 790, 803 (1975); *Commonwealth* v. *Freiberg*, 405 Mass. 282, 297 (1989). Contrast *Commonwealth* v. *Guaba*, 417 Mass. 746, 754 (1994) ("art. 14 [of the Massachusetts Declaration of Rights] implicitly requires law enforcement officials to possess a copy of the warrant when executing it"). (The *Guaba* opinion also reiterates that "police may still secure 'an area to be searched before a warrant is procured' and until the police arrive at the area with the warrant." *Id.* at 754 n.6.)[3]

---

the occupants of the house into the living room, where they were told they were not under arrest and that the police were there only to secure the house until a warrant was obtained.

[2]With regard to the defendant's assertion that a search was commenced prior to the time the warrant was obtained, it is enough to say that this is in contradiction to the motion judge's findings, which we accept in the absence of a showing of clear error. *Commonwealth* v. *Yesilciman*, 406 Mass. at 743. We also note that, as in *Commonwealth* v. *Blake*, 413 Mass. at 830, "[t]he affidavit in support of the warrant was based wholly on evidence independent of the entry into the [house]."

[3]Unlike the defendant (and to some extent the Commonwealth), we do not read the Massachusetts cases to require exigent circumstances in order to justify an impoundment while a warrant is being sought. Rather, the exigent circumstances exception is to be invoked when the government seeks to justify a warrantless search. See *Commonwealth* v. *Forde*, 367 Mass. 798, 800-801 (1975); *Commonwealth* v. *Lee*, 32 Mass. App. Ct. 85, 88 (1992); *Commonwealth* v. *Guaba*, 417 Mass. at 754. We note that Professor LaFave has interpreted the majority and dissenting opinions in *Segura* v. *United States*, 468 U.S. 796 (1984), to indicate that "[a]n . . . entry . . . of the premises to facilitate the impoundment requires *both*

3. *Amral hearing.* In support of his claim to prove the factual underpinnings of the affidavit at the evidentiary hearing on the motion, the defendant requested the judge to conduct an in camera hearing regarding inconsistent statements of two officers — Deignan and Jackson — with respect to the information provided by the confidential informer.[4] The motion judge declined because she found, even without the unnamed informer's tip, there was probable cause to issue the search warrant. Even were we to assume difficulty in finding probable cause without that tip, based on the opportunity that the judge provided the defendant at the motion hearing, the defendant failed to make a substantial, preliminary showing that the affiant intentionally or recklessly misstated any fact in the affidavit. *Commonwealth* v. *Douzanis*, 384 Mass. 434, 443 (1981). Nor did the defendant make an "adequate threshold demonstration" that the police had fabricated the informer's existence. *Commonwealth* v. *Amral*, 407 Mass. 511, 521-522 (1990). Whether the tipster knew or revealed the name of the defendant was the subject of some confusion. Detective Deignan's affidavit gives the impression that the informant did give the defendant's name to Lieutenant Jackson. For his part, Jackson indicated that the informant never gave the defendant's name. The judge permitted the defense to question the two officers about the point at the motion hearing. She attached no importance to the inconsistency and remained satisfied that the affidavit was sufficient to support probable cause. A certain leeway should be given to her in

---

probable cause and exigent circumstances," but he also concludes that this "turns out to have little practical significance [because] [t]he illegality of a search-to-impound will not ordinarily result in the exclusion of evidence, and thus it remains an illegality only in the theoretical sense, undeterred by any realistic threat of exclusion." 2 LaFave, Search and Seizure § 6.5(c), at 676-677 (2d ed. 1987).

[4] Under *Commonwealth* v. *Amral*, 407 Mass. 511, 521-522 (1990), an in camera "preliminary hearing" (prior to a *Franks* hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154 [1978]) should be held once a defendant "asserts facts which cast a reasonable doubt on the veracity of material representations made by the affiant concerning a confidential informant."

that determination. *Commonwealth* v. *Norris*, 6 Mass. App. Ct. 761, 763 (1978). There was no error.

*Judgments affirmed.*