COMMONWEALTH *vs.* JUAN DEJESUS.

No. 00-P-1367.

Essex. November 13, 2001. - November 22, 2002.

Present: JACOBS, MASON, & KANTROWITZ, JJ.

Further appellate review granted, 438 Mass. 1106 (2003).

*Controlled Substances. Search and Seizure,* Securing of premises, Expectation of privacy, Plain view. *Constitutional Law,* Search and seizure. *Practice, Criminal,* Motion to suppress.

A Superior Court judge properly allowed a criminal defendant's motion to suppress all evidence seized from his apartment during a search conducted pursuant to a warrant that had been issued based upon an affidavit describing cocaine and drug paraphernalia observed in plain view by police officers during a sweep conducted in the course of a prior warrantless entry into the apartment, where the prior warrantless entry, made to secure the premises from within in order to prevent the destruction or removal of evidence, commenced before police began the process of applying for a search warrant [527-532]; and where, even assuming the existence of probable cause to believe that illegal drugs might be found in the apartment, the prior warrantless entry was not justified by either exigent circumstances or a reasonable level of police concern that the evidence would be destroyed [532-535]. MASON, J., concurring in result. KANTROWITZ, J., concurring in part and dissenting in part.

INDICTMENTS found and returned in the Superior Court Department on May 19, 1999.

A pretrial motion to suppress evidence was heard by *Peter F. Brady*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Francis X. Spina*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*James A. Janda*, Assistant District Attorney, for the Commonwealth.

*James E. McCall* for the defendant.

JACOBS, J. Indicted for trafficking in cocaine, the defendant

filed a motion to suppress all evidence seized from his apartment in Lawrence during a search conducted pursuant to a warrant. The warrant had issued based upon an affidavit describing cocaine and drug paraphernalia observed by police officers in the course of a prior warrantless entry into the apartment. After an evidentiary hearing, a Superior Court judge allowed the motion, concluding that the warrantless entry was not grounded on circumstances of impracticability or "compelling necessity." A single justice of the Supreme Judicial Court allowed the Commonwealth to file this interlocutory appeal in which the Commonwealth argues that the police did not need exigent circumstances to enter the apartment. We affirm the order allowing the motion to suppress on grounds additional to those relied upon by the judge. See *Commonwealth* v. *Cruz*, 430 Mass. 838, 844 (2000); *Commonwealth* v. *Va Meng Joe*, 40 Mass. App. Ct. 499, 503 n.7 (1996), *S.C.*, 425 Mass. 99 (1997).

*Background.* Brian O'Neil, the State trooper who had obtained the search warrant, was the only witness at the suppression hearing. His testimony encompassed considerably more information than was contained in his affidavit in support of his application for the warrant. The facts, based on his uncontroverted testimony and a police affidavit admitted as evidence at the hearing, are as follows: On March 29, 1999, Antonio Graciano was arrested after he delivered 270 grams of cocaine to an undercover police officer in a restaurant parking lot in Lawrence. The defendant and another person who had driven to the restaurant with Graciano from his apartment at 5 Forest Street in Lawrence also were arrested. Shortly before he drove off with Graciano, the defendant had been observed walking to 5 Forest Street from the vicinity of 7 Lynch Street in Lawrence.

Soon after his arrest, Graciano told Trooper O'Neil that the defendant was his supplier and, that same day, had delivered the cocaine to Graciano on foot. Graciano further stated that the defendant lived at 7 Lynch Street, that he had been involved in numerous drug deals with the defendant, and that he had met with him in front of that address on numerous occasions but had never been inside the house. He also said he did not know in which of two apartments at 7 Lynch Street the defendant lived or whether anyone else lived in the defendant's apartment.

In the course of a separate investigation, Trooper O'Neil recently had received information from a "[c]onfidential [r]eliable [i]nformant" that an apartment on the third floor of 7 Lynch Street was a "stash location" and the "residence of two individuals involved in cocaine distribution."

After Graciano had accompanied him to 7 Lynch Street, Trooper O'Neil brought him to a police station where Graciano pointed out the defendant. Upon obtaining the keys that had been taken from the defendant at the time of his arrest, O'Neil and another officer returned to 7 Lynch Street and went directly to the third-floor apartment, where they knocked at the door and announced themselves. Receiving no response, they used the defendant's keys to open the door. They then "checked the apartment for occupants" and, finding no one, "proceeded back to the front hallway and locked the door." In the course of this "sweep for occupants" the officers saw cocaine and cocaine packaging materials in plain view on a kitchen table.[1]

The judge found that following the plain view observation

---

[1] The affidavit in support of the application for a search warrant established, in addition to the plain view observation of cocaine and cocaine packaging materials, only that the defendant was Graciano's cocaine supplier, that Graciano and the defendant had been involved in numerous drug deals, that the cocaine delivered by Graciano at the restaurant had been supplied by the defendant, and that the officers used keys seized from the defendant at his arrest to open the door of the apartment. It also indicated that Graciano had not been inside of the defendant's residence, but had met the defendant several times in front of 7 Lynch Street, and that a confidential informant had delivered information to the police within the past two weeks "regarding a cocaine distribution operation at 7 Lynch Street, floor 3, Lawrence, MA." Other than describing the confidential informant as "[r]eliable," the affidavit contained no information supporting that informant's veracity or his basis of knowledge. Without these hallmarks of accuracy, the information attributable to the informant could not lawfully have been considered in determining whether a warrant should issue. *Commonwealth* v. *Warren*, 418 Mass. 86, 88 (1994). See Smith, Criminal Practice and Procedure §§ 208-216 (2d ed. 1983 & Supp. 2002). Moreover, the information attributable to Graciano could not alone support the issuance of a warrant. The Commonwealth does not argue otherwise, claiming only that the combination of the affidavit averments, including the observations during the warrantless entry, amount to probable cause. Contrary to the view expressed in the partial concurrence and dissent, the fact that the keys taken from the defendant opened the door to the apartment established only that the defendant resided at 7 Lynch Street (a fact already supplied by Graciano), and not that there was contraband present. Accordingly, the affidavit must be construed as totally dependent upon the police

"[t]he two officers who had entered the apartment then secured the apartment pending the issuance of a search warrant." Trooper O'Neil thereafter prepared an application for a search warrant and a supporting affidavit. There is no indication that anyone otherwise had initiated the application for a search warrant prior to the officers' leaving the apartment or that it was impracticable to do so.[2] The evidence at the suppression hearing established only that it was Trooper O'Neil's "intention" to obtain a warrant at the time he entered the apartment.

In his affidavit in support of the application, Trooper O'Neil justified the warrantless entry on the ground that "potential co-conspirators could be aware of the [p]olice detection" of Graciano and the defendant.[3] The judge correctly determined that this was the only explanation entered in evidence during the suppression hearing of a "possible reason for entering the apartment in the manner [the police] did," and in effect concluded that there was no exigency, in that the circumstances described did not constitute "such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." See *United States* v. *Adams*, 621 F.2d 41, 44 (1st Cir. 1980) (using the same words to describe "[t]he ultimate test" for determining exigency). The search conducted pursuant to the warrant

observations during the warrantless sweep in order to establish probable cause for the issuance of the ensuing warrant.

[2]When Trooper O'Neil, before entering 7 Lynch Street, returned with Graciano to the police station, he possessed all the information supporting probable cause to search to which he testified at the suppression hearing, with the exception of his later plain view observation. Given that several police officers were involved in the operation that led to the arrest of the defendant, and the absence of any indication that it then was impracticable to do so, it reasonably may be inferred that Trooper O'Neil could have arranged for the start of the search warrant application process while he was at the police station. Compare *Commonwealth* v. *Navarro*, 39 Mass. App. Ct. 161, 163 (1995) ("[Officer] Hyde made arrangements for a search warrant to issue. While waiting for the warrant, Hyde and another officer went to the apartment to secure it").

[3]That belief apparently was founded upon (1) the fact that a "large crowd . . . had gathered" at the arrest of Graciano and the defendant, and (2) the receipt by Graciano's girlfriend of a telephone call to his apartment from an unknown caller to whom she stated that the police were in the apartment and that Graciano had just been arrested. In his testimony, Trooper O'Neil stated that "any occupant of that apartment [at 7 Lynch Street] could be aware that [the defendant] was arrested and remove any evidence or cocaine from that apartment."

resulted in the seizure of numerous items in addition to those on the kitchen table.

On appeal, the Commonwealth argues, citing *Commonwealth v. Blake*, 413 Mass. 823 (1992), that the police did not need exigent circumstances to enter the defendant's apartment, but were permitted to "secure the premises from within" and, therefore, their plain view observation while lawfully in the apartment could be used in obtaining a warrant. See *Commonwealth v. Forde*, 367 Mass. 798, 803 (1975) (a plain view discovery is not a "search" within the meaning of the Fourth Amendment). In *Blake*, which involved a warrantless forcible entry into a residence, the court, citing *Segura v. United States*, 468 U.S. 796, 810 (1984), stated that "[s]ecuring a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of the dwelling or its contents." *Commonwealth v. Blake, supra* at 829.

*Discussion.* "We start our discussion by restating the well known rule that warrantless entries are per se unreasonable unless they fall within one of the few narrowly drawn exceptions to the Fourth Amendment warrant requirements." *Commonwealth v. Amaral*, 16 Mass. App. Ct. 230, 233 (1983). Among the most common exceptions is that of "exigent circumstances," which permits a warrantless police search of premises, upon probable cause and a reasonable belief that evidence or contraband is at imminent risk of destruction. *Ibid.* Choosing not to contest the judge's determination that there were no exigent circumstances,[4] the Commonwealth relies on the proposition that police, having probable cause to search, may secure the premises to be searched, pending issuance of a warrant, "to prevent the potential destruction or loss of evidence related to the defendant's drug transactions." As stated, that proposition is based on settled law to the effect that even absent exigency "police officers may secure an area to be searched before a warrant is procured . . . as long as the search does not

[4]On the record before us, and because the Commonwealth does not argue error in the judge's findings of fact and conclusions of law pertaining to the absence of exigent circumstances, we accept that determination. See *Commonwealth v. Marquez*, 434 Mass. 370, 374-375 (2001).

commence before issuance of the warrant" (citation omitted). *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990).

· Less than settled, in our view, is the reach of the concept embedded in the word "secure." There is sound basis in the cases for permitting police, upon probable cause and without exigent circumstances, effectively to seize a dwelling, pending the issuance of a search warrant, by securing it from the outside, thereby preventing anyone from entering and destroying evidence of criminality or from carrying away such evidence. See *Commonwealth* v. *Hall,* 366 Mass. 790, 803 (1975), and cases cited; *Commonwealth* v. *A Juvenile (No. 2),* 411 Mass. 157, 165 n.9 (1991) (the rationale for requiring that police secure residences from the outside "rather than searching immediately on obtaining probable cause . . . is that the police should not be allowed to intrude on the privacy of homes without the authorization of a neutral and detached magistrate" [citations omitted]). The extension of this principle of external impoundment to permit the securing of a dwelling by unauthorized entry and "sweep" of the inside to protect against possible destruction of evidence is, however, not free from doubt.[5]

Nevertheless, even if we assume that such an extension,

---

[5]In *Segura* v. *United States,* 468 U.S. 796, 800 (1984), Federal agents arrested Segura, a suspected drug dealer, in the lobby of the building in which he resided, then went to his apartment where their knock on the door caused a second suspected drug dealer, Colon, to appear. The agents entered the apartment without consent and conducted "a limited security check of the apartment to ensure that no one else was there who might pose a threat to their safety or destroy evidence. In the process, the agents observed . . . in plain view . . . accouterments of drug trafficking." *Id.* at 800-801. After arresting Colon, Segura and three other occupants of the apartment were taken away and two agents remained in the apartment. Before entering the apartment, the agents had discussed procuring a search warrant for the apartment with an Assistant United States Attorney and had been advised that because of the lateness of the hour, one could not be obtained until the following day. The warrant was obtained and the apartment searched some nineteen hours after the original entry. On appeal to the Supreme Court, lower court determinations that the initial warrantless entry and limited security search were illegal were not in issue. "The only issue [was] whether drugs and the other items not observed during the initial entry and first discovered by the agents the day after the entry, under an admittedly valid search warrant, should have been suppressed." *Id.* at 804. The Court ruled that suppression of those later discovered items was not required. In a portion of the decision in which only one other justice joined, Chief Justice Burger wrote: "We hold, therefore, that securing a dwelling, on the basis of probable cause, to prevent the destruction

purportedly supported by the above quoted language and facts of *Commonwealth* v. *Blake*, represents the current state of Fourth Amendment jurisprudence, the factual circumstances in this case call for affirmance of the allowance of the defendant's motion to suppress.

" 'The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy. It was just this sort of intrusion that the

or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." *Id.* at 810. In the same portion, the Chief Justice treated the agents' actions within the apartment as a reasonable seizure affecting only the possessory interests of Segura and Colon and not as a search affecting their privacy interests. *Id.* at 809-813. In another part of the decision in which Justices White, Powell, Rehnquist, and O'Connor joined, Chief Justice Burger wrote: "None of the information on which the warrant was secured was derived from or related in any way to the initial entry into [the] apartment; the information came from sources wholly unconnected with the entry and was known to the agents well before the initial entry. No information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant." *Id.* at 814. Noting that "the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence [being] challenged," the Court concluded that "[t]he legality of the initial entry is, thus, wholly irrelevant under *Wong Sun* [v. *United States*, 371 U.S. 471, 488 (1963)]." *Ibid.* In *Murray* v. *United States*, 487 U.S. 533, 535 (1988), Justice Scalia, writing for the Court, removed any doubt about the Court's view of the legal status of the warrantless entry in *Segura* by stating: "In [*Segura*] we held that police officers' *illegal entry* upon private premises did not require suppression of evidence subsequently discovered at those premises when executing a search warrant obtained on the basis of information wholly unconnected with the initial entry" (emphasis supplied). Supporting this view of *Segura*, a preeminent commentator has noted that "[a]n entry made to impound certainly intrudes upon privacy interests, and thus must be characterized as a search under the Court's definition [in *Segura*]." 3 LaFave, Search and Seizure § 6.5(c), at 366 (3d ed. 1996). Indicating that the dissenters in *Segura* are "of the same view" and that "an unreasonable search" had occurred, Professor LaFave states, *"[t]he opinion of the Court never suggests otherwise*, for it is there acknowledged that 'absent exigent circumstances, the entry may have constituted an illegal search.' " *Ibid.*, quoting from *Segura*, 468 U.S. at 811. He concludes that "[a]ll members of the Court also appear to accept the proposition that a search (i.e., entry) of the premises to facilitate the impoundment requires *both* probable cause and exigent circumstances" (emphasis in original). *Ibid.* See *Kirk* v. *Louisiana*, 536 U.S. 635, 638 (2002) ("police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home"); Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 14-1(b) (2001).

Fourth Amendment [and art. 14 of the Massachusetts Declaration of Rights were] designed to circumscribe by the general requirement of a judicial determination of probable cause.' *Commonwealth* v. *Forde,* 367 Mass. 798, 805 (1975)." *Commonwealth* v. *Marquez,* 434 Mass. 370, 374 (2001). "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' *United States* v. *United States District Court,* 407 U.S. 297, 313 [(1972)]." *Payton* v. *New York,* 445 U.S. 573, 585 (1980). The "central requirement [of the Fourth Amendment] is one of reasonableness." *Illinois* v. *McArthur,* 531 U.S. 326, 330 (2001). We review the facts and the case law through the prism of that central requirement.

The Commonwealth relies primarily on *Commonwealth* v. *Blake, supra,* and the Supreme Court decision cited therein, *Segura* v. *United States,* 468 U.S. 796 (1984).[6] Both decisions utilized the same wording: "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence *while a search warrant is being sought* is not itself an unreasonable seizure of the dwelling or its contents" (emphasis supplied). *Id.* at 810. *Commonwealth* v. *Blake,* 413 Mass. at 829. In *Blake,* the arrest of the defendant for distributing drugs at a gasoline station was followed by police officers leaving the station, going to the defendant's house, and securing it from within *while* another officer at the station applied for a search warrant. *Id.* at 824. In *Segura,* the Court held "that where officers, having probable cause, enter premises, and . . . secure the premises from within . . . *while others, in good faith, are in the process of obtaining a warrant*" (emphasis supplied), there is no Fourth Amendment violation.[7] *Segura* v. *United States, supra* at 798. There is ample reason for distinguishing these cases

---

[6]The other Massachusetts cases cited by the Commonwealth in support of its claim that the initial entry was lawful either rely on *Commonwealth* v. *Blake, supra,* or are distinguishable from the instant case in that they are based on exigency or do not involve the exploitation of the initial entry. See *Commonwealth* v. *Alvarez,* 422 Mass. 198, 210-211 (1996); *Commonwealth* v. *Watkins,* 425 Mass. 830, 842 (1997); *Commonwealth* v. *Voris,* 38 Mass. App. Ct. 377, 381 (1995); *Commonwealth* v. *Navarro,* 39 Mass. App. Ct. 161, 164-165 (1995); *Commonwealth* v. *Rotolo,* 45 Mass. App. Ct. 927, 928 (1998).

[7]Although the defendant in his motion to suppress asserted his rights under both the Fourth Amendment and art. 14 of the Massachusetts Declaration of

from the one before us based upon the absence of an ongoing warrant application process. To extend the holdings of *Blake* and *Segura* to include a circumstance where the application for a search warrant has not been commenced but is, at most, merely the unexpressed intention of the officer making the entry, is tantamount to abolishing the warrant requirement.[8] The preparation and processing of a warrant application by officers other than those making the entry serves as a safeguard against inexpedient and premature police intrusion into a home. That safeguard is the awareness by the participants in the entry of an essentially simultaneous judicial review of the propriety of the search. If police officers are informed by our decisions that an entry into a home will be upheld if they later testify that they intended to apply for a warrant, the salutary effect of concurrent judicial evaluation will be significantly diminished. Moreover, "[t]he incentives for such illegal conduct are clear. Obtaining a warrant is inconvenient and time consuming. Even when officers have probable cause to support a warrant application, therefore, they have an incentive first to determine whether it is worthwhile to obtain a warrant. Probable cause is much less than certainty, and many 'confirmatory' searches will result in the discovery that no evidence is present, thus saving the police the time and trouble of getting a warrant." *Murray* v. *United States*, 487 U.S. 533, 546-547 (1988) (Marshall, J., dissenting). As Justice Jackson observed in *Johnson* v. *United States*, 333 U.S. 10, 13-14 (1948), "[t]he point of the Fourth Amendment,

Rights, and although "[i]t is by now firmly established that, in some circumstances, art. 14 affords greater protection against arbitrary government action than do the cognate provisions of the Fourth Amendment," *Commonwealth* v. *Stoute*, 422 Mass. 782, 787 n.10 (1996), quoting from *Jenkins* v. *Chief Justice of the Dist. Ct. Dept.*, 416 Mass. 221, 229 n.16 (1993), we have no occasion, in light of our decision, to look beyond the rights afforded by the Fourth Amendment. See *Commonwealth* v. *DiGeronimo*, 38 Mass. App. Ct. 714, 721 n.8 (1995).

[8]While our courts, on occasion, have countenanced unauthorized residence sweeps, apparently conducted without benefit of a simultaneous effort to obtain a search warrant, those cases are distinguished by an absence of exploitation of the initial entry. See *Commonwealth* v. *Alvarez*, 422 Mass. 198, 210-211 (1996); *Commonwealth* v. *Voris*, 38 Mass. App. Ct. 377, 381 n.3 (1995); *Commonwealth* v. *Cruz*, 53 Mass. App. Ct. 24, 27 (2001). See also *Murray* v. *United States*, 487 U.S. 533, 542 n.3 (1988) ("what counts is whether the actual illegal search had any effect in producing the warrant").

which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

Even if we assume that a warrant application had been initiated in this case, we must next examine the nature of the police intrusion and its claimed justification. Accepting fully the proposition that a brief sweep, such as here involved, constitutes primarily a seizure of the defendant's apartment, and not a search of it, and that "[t]herefore, the heightened protection we accord privacy interests is simply not implicated where a *seizure* of premises, not a search, is at issue," *Segura* v. *United States*, 468 U.S. at 810, experience and common sense nevertheless dictate that some modicum of reasonably expected privacy is invaded by police officers rushing through and looking into various rooms of a residence. Just as evidence of criminality may, as here, incidentally fall within the plain view of the officers checking for occupants, so also may personal aspects of home life normally shielded by the walls of the residence be exposed. "Nowhere are expectations of privacy greater than in the home, and '[i]n the home . . . *all* details are intimate details . . . .' " *Commonwealth* v. *Balicki*, 436 Mass 1, 12 n.14 (2002), quoting from *Kyllo* v. *United States*, 533 U.S. 27, 37 (2001). "Consequently, . . . [we] balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Illinois* v. *McArthur*, 531 U.S. at 331.

The predicate for securing a dwelling is the existence, immediately prior to the moment of seizure, of facts within the knowledge of the police, establishing probable cause to search.[9] We assume, without deciding, that those facts, as developed at the suppression hearing, establish a sufficient nexus between the

---

[9]We agree with the Commonwealth's contention that, as with the issue of exigent circumstances, the relevant facts as to the propriety of an impoundment are not only those set forth in the affidavit in support of the application for a warrant, but also those known to the police at the time of the securing of the dwelling as reflected here by the totality of the hearing evidence. Compare *Commonwealth* v. *Amaral*, 16 Mass. App. Ct. 230, 233 (1983) ("[t]he ques-

drug activity in which the defendant was implicated and his apartment to support probable cause to believe illegal drugs might be found in that apartment. See *Commonwealth* v. *Blake,* 413 Mass. at 829. Once probable cause to search exists, the decision to secure a dwelling from within requires an objectively reasonable level of police concern that evidence of criminality will be destroyed in order to justify intruding, albeit minimally, on the reasonable expectation of privacy of the residents of that dwelling.[10] Absent such an acceptable level of concern, the standard supporting warrantless police entry would reduce simply to probable cause to believe that evidence of criminality is contained in the premises. Such a shrunken standard would undermine significantly the warrant requirement of the Fourth Amendment.

Here, given the absence of exigency, as found by the judge and essentially conceded by the Commonwealth, the threat of imminent destruction is ruled out as a basis for police concern. Nor does the record support other recognized levels of concern such as the "probability of destruction." *Illinois* v. *McArthur, supra* at 337 (Souter, J., concurring), or "a founded or reasonable suspicion" justifying an unobtrusive search. *Commonwealth* v. *Alvarez,* 422 Mass. 198, 210 (1996). That leaves, as the only plausible basis for concern, Trooper O'Neil's statement that "potential co-conspirators could be aware" of the arrest of Graciano and the defendant. Even giving the Commonwealth the benefit of a generous interpretation, that statement reflects, at

tion whether exigent circumstances exist depends upon an evaluation of all the circumstances as they appear to the police at the time").

[10]Another justifying concern, not suggested by the record or the testimony of Trooper O'Neil, could be the security of police officers or civilians. See *Boston Housing Authy.* v. *Guirola,* 410 Mass. 820, 829 (1991). Compare cases involving protective sweeps associated with arrests or arrest warrants: *Maryland* v. *Buie,* 494 U.S. 325, 334 (1990); *Commonwealth* v. *Acosta,* 416 Mass. 279, 283 (1993); *Commonwealth* v. *Bui,* 419 Mass. 392, 395-396, cert. denied, 516 U.S. 861 (1995); *Commonwealth* v. *Watkins,* 425 Mass. 830, 842 n.16 (1997); *Commonwealth* v. *Nova,* 50 Mass. App. Ct. 633, 634-636 (2000). Absent safety concerns, the Supreme Judicial Court has set a strict standard for entry into dwellings to effect arrests. See *Commonwealth* v. *Marguez,* 434 Mass. 370, 376 n.5 (2001) ("no persuasive reason has been shown to create an exception to our bright-line rule that, to make a lawful felony arrest in a dwelling, the police need either a warrant or probable cause and exigent circumstances").

most, a mere possibility of destruction founded on speculation that (1) the third floor apartment was occupied when the officers arrived; (2) the occupant had learned of the defendant's arrest or would learn of it during the time it would take to obtain a search warrant; and (3) such occupant would destroy the evidence.[11] "We cannot speculate . . . to justify the warrantless entry into a private residence." *Commonwealth* v. *Huffman*, 385 Mass. 122, 127 (1982). In view of the highly speculative nature of the police concern and the absence of a contemporaneous effort to obtain a warrant, even the minimal intrusion in issue was not reasonable.

Accordingly, since the entry was constitutionally invalid, "the police had no legal justification for being present . . . and cannot rely on the 'plain view' doctrine." *Commonwealth* v. *Forde*, 367 Mass. at 807. Compare *Commonwealth* v. *D'Amour*, 428 Mass. 725, 731 (1999) ("The police are lawfully in a position from which they view an object if they did not violate the Fourth Amendment"). Given Trooper O'Neil's exploitation of his unlawful entry in his affidavit in support of the application for a warrant and the absence of a recitation of sufficient independent sources in that affidavit to alone support the issuance of the warrant, see note 1, *supra*, the fruits of the subsequent search of the defendant's apartment were irretrievably tainted. *Wong Sun* v. *United States*, 371 U.S. 471, 484-488 (1963). *Commonwealth* v. *Balicki*, 436 Mass. at 15-16. Contrast *Murray* v. *United States*, 487 U.S. at 535-536 ("In applying for the warrant, the agents did not mention the prior entry, and did not rely on any observations made during that entry"); *Segura* v. *United States*, 468 U.S. at 814 ("None of the information on which the warrant was secured was derived from or related in any way to the initial entry into [the] apartment"); *Com-*

---

[11]With the defendant in custody, the only basis for a belief that the apartment was occupied was the unsupported information supplied to Trooper O'Neil by the "[c]onfidential [r]eliable [i]nformant" that 7 Lynch Street was "the residence of two individuals involved in cocaine distribution." The only evidence supporting the possibility that an occupant of the apartment was aware of the defendant's arrest was (1) the fact that the defendant was arrested before a "large crowd" in a public place, an unspecified distance from the defendant's residence or Graciano's residence, and (2) the testimony that an unidentified telephone caller to Graciano's home had been informed of Graciano's arrest and that police were in his home.

*monwealth* v. *Blake, supra* at 830 ("[T]he affidavit in support of the warrant was based wholly on evidence independent of the entry into the apartment").

> *The order allowing the motion*
> *to suppress is affirmed.*

MASON, J. (concurring in result). I agree that the order allowing the motion to suppress in this case should be affirmed. I would state flatly, however, that absent one of the well defined exigent circumstances previously identified in the case law, police officers may not enter a private premises without a warrant even if they have probable cause to believe that evidence or contraband is contained therein and are in the process of obtaining a warrant. I believe that this is the law.

Indeed, in *Segura* v. *United States*, 468 U.S. 796 (1984), six members of the United States Supreme Court indicated in separate opinions that they regarded it as settled that "an entry in the absence of exigent circumstances is illegal." *Id.* at 812 (separate opinion of Burger, C.J.), 820 (Stevens, J., dissenting). No member of the Court suggested a contrary view. See *Coolidge* v. *New Hampshire*, 403 U.S. 443, 478 (1971) ("searches and seizures inside a man's house without a warrant are *per se* unreasonable in the absence of some one of a number of well defined 'exigent circumstances' "); *Vale* v. *Louisiana*, 399 U.S. 30, 34-35 (1970) (absent a demonstrable threat of imminent destruction of evidence, the authorities may not enter a residence without a warrant in order to preserve that evidence).

I do not read the opinion of the Supreme Judicial Court in *Commonwealth* v. *Blake*, 413 Mass. 823 (1992), as establishing any different rule. Indeed, the court explicitly noted in *Blake* that, unlike the circumstances existing in the present case, the police had not used any of the observations made at the time of their initial entry into the defendant's home to subsequently obtain a warrant to search the home. 413 Mass. at 830. This circumstance would have been irrelevant if the initial entry had been lawful. See *Commonwealth* v. *Alvarez*, 422 Mass. 198, 210-211 (1996).

Chief Justice Burger did state in *Segura* that "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." *Segura* v. *United States*, 468 U.S. at 810 (opinion of Burger, C.J.). He also indicated (in a part of his opinion for the court which was joined, by only one other Justice) that, for purposes of this rule, it should make no difference that the police had secured the building from within rather than from without. *Id.* at 811. Contrast *Illinois* v. *McArthur*, 531 U.S. 326 (2001) (temporary seizure of private premises from outside pending the attaining of a warrant is not prohibited by Fourth Amendment). The Chief Justice made these statements, however, only in the context of the circumstances of that case, where a defendant was claiming that an initial warrantless seizure of his home required the suppression of all items subsequently obtained from the home, regardless of whether the police had made any observations of contraband during such initial seizure, or had thereafter used such observations to obtain a warrant to search the premises. The Chief Justice nowhere suggested that, if the police had made any such observations while making their warrantless seizure from within without exigent circumstances, the observations would not have constituted an unlawful search (as distinct from an unlawful seizure) requiring a suppression of all the fruits of that search. To the contrary, as noted above, the Chief Justice specifically recognized in *Segura* that "an entry in the absence of exigent circumstances is illegal." *Id.* at 812. See *Kirk* v. *Louisiana*, 536 U.S. 635, 638 (2002) ("police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home"); LaFave, Search and Seizure § 6. 5(c), at 366-367 (3d ed. 1996).

In the present case, the Commonwealth made no sufficient showing that there were exigent circumstances justifying the initial warrantless entry of the defendant's apartment. Nor did it even contend that the information contained in the affidavit subsequently submitted to obtain a warrant was sufficient, absent the observations made during the initial warrantless entry, to

establish probable cause.[1] Nor did the judge find that Trooper O'Neil would have sought the warrant even if he had not made the improper observations, which is an additional prerequisite to a finding that the warrant was not "tainted" by the initial unlawful entry. See *Murray* v. *United States*, 487 U.S. 533, 542-544 (1988). In these circumstances, I conclude that the motion to suppress was properly allowed.

KANTROWITZ, J. (concurring in part, dissenting in part).

## I

I agree that observations made while securing the premises may not be included in the warrant application. *Commonwealth* v. *Blake*, 413 Mass. 823, 830 (1992). I further agree with the opinion's central holding: the police, who possess probable cause to believe that evidence of criminal activity is present, and are in the process of securing a search warrant,[1] may enter the apartment so long as they have a reasonable basis for concluding the evidence will be destroyed.

---

[1] In fact, other than the observations made in the defendant's apartment, Trooper O'Neil's affidavit included only Graciano's statements to the effect that the defendant was the source of Graciano's cocaine and that Graciano had met the defendant on various prior occasions at 7 Lynch Street, where the defendant lived, and a brief, elliptical reference to "information" obtained from a "[c]onfidential [r]eliable [i]nformant" regarding a "cocaine distribution operation at 7 Lynch Street, floor 3, Lawrence, MA." Even if the Commonwealth had argued the point, I would conclude that this is not enough, by itself, to establish probable cause for a search of the defendant's apartment. See *Commonwealth* v. *Chongarlides*, 52 Mass. App. Ct. 366, 371 (2001) (affidavit was inadequate to establish probable cause to search defendant's home where it contained no specific evidence tying the home to illegal drug transactions other than that the defendant lived there). See also *Commonwealth* v. *Warren*, 418 Mass. 86, 88 (1994) (affidavit containing information received from confidential informant cannot establish probable cause in search absent some indication of basis for informant's knowledge and reason for believing that informant is reliable).

[1] Typically the decision to secure, as here, is made at the outset. The police officer testified that it was his intent to secure the premises and then write the warrant application, which is precisely what he did. The majority finds it troublesome that a fellow officer was not, at the moment of the entry, traveling to the police station to start writing the warrant application, which the majority would presumably qualify as being "in the process of obtaining a warrant." *Ante* at 526, 530. This level of court scrutiny needlessly micromanages police activity.

## II

Here, two affidavits, totaling fourteen pages, accompanied the warrant application.[2] One sentence concerned observations made while inside the apartment.[3] By striking that single sentence,[4] I believe that probable cause still existed for the issuance of the warrant. As such, I respectfully disagree with the majority on this point.

The case law involving search warrants is well known. "The standard for issuing a search warrant is probable cause. . . . The law requires probable cause to believe that items sought are related to criminal activity under investigation and that the items may reasonably be expected to be located in the place to be searched" (citation omitted). Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 8-1 (2001). "[I]nformation in an affidavit supporting an application for a search warrant should be considered 'in an ordinary, commonsense manner without hypertechnical analysis' . . . ." *Commonwealth* v. *Perez-Baez*, 410 Mass. 43, 46 (1991), quoting from *Commonwealth* v. *Melendez*, 407 Mass. 53, 60 (1990) (Greaney, J., dissenting).

After striking the one offensive sentence contained in the affidavit, we are left with the following. The defendant was arrested with two others, Graciano and Polanco, selling a significant quantity of cocaine. "It [is] reasonable to assume that drugs, drug paraphernalia, and money, the items specified in the warrant and seized, would be located in the residence of a person engaged in drug transactions." *Commonwealth* v. *Singer*, 29 Mass. App. Ct. 708, 715 (1991). Graciano volunteered information, making statements against penal interest, admitting

[2]One of the affidavits concerned Graciano's apartment; the other DeJesus's.

[3]"After entering the apartment to conductive [*sic*] sweep for occupants this officer immediately observed cocaine and cocaine packing equipment on the kitchen table."

[4]"When a portion of an affidavit in support of a search warrant application is determined to violate a constitutional, statutory, or common law requirement, the offending portion of the affidavit may not be considered in the determination of probable cause. . . . The offending material and any other portions tainted by the offending material must be excised or redacted from consideration by the judge or magistrate in reaching the probable cause determination." Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 10-7 (2001).

his participation in this and numerous past drug deals with DeJesus, whom he identified as his supplier. He further told the police that he met with DeJesus in front of DeJesus's apartment, which he identified. It may be inferred that this is where Graciano received the drugs from his supplier. A confidential informant, whose reliability is questionable, told the police that there was a cocaine distribution operation at 7 Lynch Street, floor 3, Lawrence. Keys taken from DeJesus fit the outside door to 7 Lynch Street and an apartment on the third floor, which corroborated both the information received from Graciano that the defendant in fact lived in that location and the untested informant's information that drugs were being dealt from there. "[I]ndependent police corroboration or mutual corroboration of multiple informants may compensate for deficiencies in the individual sources." *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 513, 517 (1999).

The question is this: after reading the affidavits in toto, did probable cause exist to conclude that cocaine "may reasonably be expected to be located in the place to be searched"? I believe that, while a close question, it did, and, as such, the warrant was properly issued.[5]

---

[5]"We note . . . that there was much less information regarding the informant's tip in the affidavit . . . on which the warrant issued than was produced at the suppression hearing . . . ." *Commonwealth* v. *Hill*, 51 Mass. App. Ct. 598, 611 n.12 (2001). I recognize that "the warrant must be supported solely by the affidavit, and evidence from the evidentiary hearing on a motion to suppress cannot be considered by a reviewing court." *Id.*