COMMONWEALTH vs. CLINTON RICHARDSON.

No. 93-P-1011.

Suffolk. April 14, 1994. - October 14, 1994.

Present: WARNER, C.J., DREBEN, & JACOBS, JJ.

*Grand Jury. Practice, Criminal,* Grand jury proceeding, Indictment, Con-
tinuance, Duplicative convictions. *Evidence,* Grand jury proceeding.
*Probable Cause. Constitutional Law,* Search and seizure, Probable
cause. *Search and Seizure,* Probable cause, Affidavit. *Controlled
Substances.*

The record of a criminal trial demonstrated disputed factual issues with
respect to the defendant's claim on appeal that the integrity of the
grand jury was impaired by the Commonwealth's alleged presentation
of false or deceptive testimony; the defendant should proceed on the
issue by way of a motion for postconviction relief. [484-485, 489]
Facts related in a police officer's affidavit regarding a controlled buy of
narcotics by an unnamed informant at a certain address provided suffi-
cient probable cause for the issuance of a warrant for the search of a
certain apartment at that address. [485-487]
The judge at a criminal trial did not abuse his discretion in denying de-
fense counsel's motion for a continuance made on the day the case was
assigned for trial, in circumstances where counsel had ample time to
prepare the case before the defendant's default on a trial date almost
five months earlier and where no specific ground for a continuance was
articulated. [487-489]
In the circumstances of a criminal case, where charges for trafficking in
cocaine and distribution of cocaine were based on separate and distinct
quantities of cocaine, conviction and sentencing on both charges were
not duplicative. [489]

INDICTMENTS found and returned in the Superior Court
Department on June 12, 1990, and June 13, 1990,
respectively.

A pretrial motion to suppress evidence was heard by *John
J. Irwin, Jr.,* J., and the cases were tried before *Robert A.
Mulligan,* J.

*Robert R. Pierce* (*Peter E. Sheridan* with him) for the defendant.

*Scott H. Kremer,* Assistant District Attorney, for the Commonwealth.

WARNER, C.J. On March 8, 1990, Detective Elton Grice of the Boston police drug control unit obtained a search warrant for apartment number two, a second-floor apartment, at 115 Homestead Street in the Roxbury section of Boston, on the strength of a controlled purchase made through a confidential informant the day before. Before executing the warrant, Detective Grice returned to the apartment on March 12, 1990. Working undercover, Grice himself purchased a small bag of cocaine from the defendant, Clinton Richardson. Having thus confirmed that drug sales from the apartment were ongoing, Detective Grice returned to the apartment within ten minutes with four other police officers to execute the search warrant. Four additional officers kept watch over the rear of the building. As the officers in front entered the apartment, a cloth bag was thrown from a second-floor window in the rear of the building. The officers in back retrieved the package and found inside it eighty glassine bags containing white powder. Laboratory analysis would later confirm that the bags contained a total of 19.84 grams of a cocaine mixture. A small quantity of ammunition was also found in the bag. Meanwhile, Detective Grice, who was the first officer to enter the apartment, observed Richardson coming forward from the rear of the apartment. Another man was sitting on a couch in the front room. The windows in the front room faced the front of the apartment building, and two open windows in the rear bedroom faced the back of the building.

Richardson was indicted by a grand jury and was convicted of distributing cocaine (G. L. c. 94C, § 32A[c]) and of trafficking in cocaine in an amount exceeding fourteen grams (G. L. c. 94C, § 32E[b][1]).[1] He argues on appeal that (1) Detective Grice impaired the integrity of the grand

---

[1]Richardson was acquitted on charges of possession of ammunition (G. L. c. 269, § 10) and of marihuana (G. L. c. 94C, § 34). An indict-

jury proceedings by knowingly giving false testimony; (2) his motion to suppress, on the ground that the affidavit supporting the search warrant was insufficient to establish probable cause, was erroneously denied; (3) the trial judge abused his discretion in denying Richardson's motion for a continuance; and (4) his convictions for both distribution and trafficking in cocaine were duplicative and violated his right to due process of law.

1. *Grand jury proceedings.* Richardson claims that the integrity of the grand jury was impaired by the Commonwealth's presentation of false or deceptive testimony on the part of Detective Grice.[2] In order to warrant dismissal of an indictment on that ground, a defendant must show that false or misleading testimony actually was presented by the Commonwealth with the intention of obtaining an indictment, that the Commonwealth, at the time, knew that the testimony was false or acted with reckless disregard for its truth or falsity, and that the testimony "probably influenced" the grand jury's determination. *Commonwealth* v. *Mayfield*, 398 Mass. 615, 621-622 (1986).

Since Richardson's argument depends crucially on disputed factual issues — whether Detective Grice's testimony was indeed false; whether, if false, it was knowingly or recklessly presented with the intent of obtaining an indictment; and whether it probably influenced the grand jury's determination to indict — the grand jury claim is "best left for resolution in the first instance by the trial judge on a motion for

---

ment charging conspiracy to violate the controlled substance laws (G. L. c. 94C, § 40) was placed on file with the defendant's consent.

[2]Richardson claims that the prosecutor intentionally elicited false testimony from Detective Grice: namely, testimony that Richardson had been identified as the person who attempted to dispose of the contraband via the rear window. Richardson argues that this testimony must have been false because Detective Rentas, one of the officers who actually saw the package thrown, testified at trial that he had been unable to see who threw the package. Grice must have known that this testimony was untruthful, the argument continues, because of discussions with Rentas. Finally, Richardson argues, since the testimony provided the only link between him and the stash of cocaine, it must have influenced the grand jury's determination to indict.

new trial." *Gibney* v. *Commonwealth,* 375 Mass. 146, 148 (1978). See also *Commonwealth* v. *Harrington,* 379 Mass. 446, 448 (1980). "Appellate courts are not fact finders." *Director of Div. of Employment Sec.* v. *Mattapoisett,* 392 Mass. 858, 862 n.5 (1984).

2. *Probable cause.* The affidavit supporting the search warrant, prepared by Detective Grice, states that Grice had received anonymous complaints regarding illicit drug activity conducted from apartment two at 115 Homestead Street. He also had received information from another drug control unit detective regarding a failed raid at that address approximately nine months earlier. On March 7, 1990, Grice had conducted a controlled purchase through an informant identified in the affidavit as "IT". IT had provided information leading to the arrest of two named individuals for trafficking in cocaine. Grice and IT went to 115 Homestead Street, where, after making sure that IT was carrying no drugs, Grice sent IT inside. Approximately three and one-half minutes later, IT returned with a small amount of crack cocaine, which IT reported having purchased for ten dollars from a black male in apartment two.

When a determination of probable cause is based, at least in part, on statements made to the police by an informant, art. 14 of the Massachusetts Declaration of Rights requires that the person making that determination have adequate evidence of the informant's veracity and of the basis of the informant's knowledge. *Commonwealth* v. *Upton,* 394 Mass. 363, 374-377 (1985). Where traditional indicia of veracity or basis of knowledge are weak or absent, either or both qualities may be shown by independent police corroboration of portions of the informant's statement. *Id.* at 376. *Commonwealth* v. *Blake,* 413 Mass. 823, 826-827 (1992). In narcotics cases, a controlled buy is often employed to provide the necessary corroboration. See *Commonwealth* v. *Blake, supra* at 828; *Commonwealth* v. *Spano,* 414 Mass. 178, 185 (1993); *Commonwealth* v. *Warren,* 418 Mass. 86, 90 (1994); *Commonwealth* v. *Benlien,* 27 Mass. App. Ct. 834, 837-838 (1989); *Commonwealth* v. *Olivares,* 30 Mass. App. Ct. 596,

598 (1991); *Commonwealth* v. *Tshudy*, 34 Mass. App. Ct. 955, 956-957 (1993).

Because IT claimed to have made the purchase directly, and therefore to have firsthand knowledge of what was told the police, IT's statement satisfies the basis of knowledge test. *Commonwealth* v. *Parapar*, 404 Mass. 319, 322 (1989). Contrast *Commonwealth* v. *Honneus*, 390 Mass. 136, 140 (1983), where the controlled purchase was made through a middleman. The defendant claims, however, that the affidavit did not sufficiently show the informant's veracity. The motion judge correctly found that IT lacked the track record traditionally used to show credibility. That IT had previously provided information leading to arrests for similar crimes did not make the informant credible; arrests, after all, may be made upon a bare showing of probable cause, and so do not indicate the accuracy of the information given. *Commonwealth* v. *Rojas*, 403 Mass. 483, 486 (1988). The judge concluded, however, that police observations during the controlled buy sufficiently corroborated the veracity of IT's statement.

Despite some reservations about the level of supervision the police exercised over the controlled buy in this case,[3] we think that the motion judge was correct. The fact that IT was able to produce cocaine within three to four minutes of having been dropped off at 115 Homestead Street corroborated IT's assertion that the drug was being sold in that vicinity. See *Commonwealth* v. *Warren*, 418 Mass. at 90-91. When the police verify actual criminal activity, that corroboration lends much more credibility to the informant than when mere innocuous details from a tip are confirmed. See *Commonwealth* v. *Filippidakis*, 29 Mass. App. Ct. 679, 685-686 (1991). Contrast *Commonwealth* v. *Brown*, 31 Mass. App. Ct. 574, 579 (1991). The corroboration need not be

---

[3]Some of these reservations may result from imprecision in drafting the affidavit rather than from actual deficiencies in supervision. For example, the affidavit does not explain how the detective "made sure" that the informant was carrying no drugs prior to the purchase, nor does it describe careful observation of the informant's entry or exit from the building.

tied directly to the defendant, so long as it generally indicates the reliability of the informant's statement. See, e.g., *Filippidakis*, 29 Mass. App. Ct. at 685. Such was the case here.

Aside from direct corroboration, the circumstances of close observation during a controlled buy make it unlikely that an informant who was reporting dishonestly on the source of his drugs would agree to participate in such a purchase. See *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. at 598. The resulting impression of reliability is bolstered in this case by the fact that, as appears from the affidavit, the purchase was suggested by Detective Grice and not by the informant. IT, therefore, would have had no opportunity to make plans to conceal his or her activities or to secrete drugs within the building. These indicia of reliability, along with the corroborative value of the controlled purchase, sufficiently demonstrated IT's veracity to support a finding of probable cause.

3. *Denial of continuance.* The defendant failed to appear for trial on April 16, 1991, and a default warrant was issued. In late August, 1991, he was arrested on an unrelated charge. On September 6, 1991, a Friday, defense counsel appeared before the trial judge; the case was set for trial on the following Monday. On that day, defense counsel moved for a continuance, apparently to afford additional time to prepare the case.[4] Noting that the case had been set for trial almost five months earlier and would then have been tried but for the defendant's default, the judge denied the motion.

"Ordinarily, the granting of a continuance rests in the sound discretion of the trial judge, and a denial of a continuance will not constitute error absent an abuse of that discretion." *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50-51 (1976). *Commonwealth* v. *Mamay*, 407 Mass. 412,. 419 (1990). "In denying the request for a continuance in this

---

[4]The only reason for a continuance orally presented to the judge was counsel's statement, "I'm asking for a continuance for the sake of justice." The defendant's written motion stated simply that "additional time is needed to obtain and review discovery." It should also be noted that several continuances were allowed preceding the April trial date.

case the judge could have considered that a relatively simple case had been pending for some time and that the defendant had caused multiple delays of the trial." *Commonwealth* v. *Bryer*, 398 Mass. 9, 15 (1986). In a similar case, the Supreme Judicial Court wrote:

> "This defendant had been represented at the earliest stage of the proceedings against him. He chose to flee the court at a time when his trial was impending. . . . In the interim between court appearances he had ample opportunity to prepare his defence with his former counsel or retain other counsel of his choice and go forward with him. It constitutes no 'myopic insistence upon expeditiousness' to hold this defendant to a trial of which he had knowledge long before the day he filed his motions."

*Commonwealth* v. *Smith*, 353 Mass. 442, 445-446 (1968).

In deciding that the judge did not abuse his discretion, we note that defense counsel had ample time to prepare the case for trial before the September 9, 1991, date was set and that he presented an effective defense. See *Commonwealth* v. *Habarek*, 402 Mass. 105, 108 (1988). The defendant has failed to show that more time would have helped him to accomplish anything "significantly" better. See *Commonwealth* v. *Bryer*, 398 Mass. at 15-16, quoting from *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 277 (1973).[5] If there was any specific need for a continuance, counsel could have requested

---

[5]Richardson suggests that his attorney needed the extra time in order to secure an independent expert who would contest the amount of cocaine on which the trafficking charge was based. This ground was not explained to the trial judge until after the continuance was denied. Nonetheless, the record reflects that defense counsel was provided with funds for such an expert, and did in fact locate an expert, with whom he consulted prior to cross-examining the Commonwealth's chemist. As to Richardson's argument that the Commonwealth's delinquent discovery created the need for a continuance, compare *Commonwealth* v. *Grieco*, 5 Mass. App. Ct. 350, 356-357 (1977) (despite Commonwealth's late disclosure of witness names, continuance was unnecessary where defendant's interest could be otherwise accommodated).

one at the conference on September 6, before the case was set for trial. Compare *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 517 (1972) (where defendant waited until the date of trial to request appointed counsel, he was chargeable with his own delay, and continuance was properly denied).

4. *Duplicative convictions.* Richardson argues lastly that being convicted for both distribution of cocaine (the sale to Detective Grice) and trafficking in cocaine in an amount exceeding fourteen grams (based on his possession with intent to distribute the 19.84 grams of cocaine thrown out the rear window) violated his rights under the double jeopardy and due process clauses of the Federal Constitution. The argument is foreclosed by *Commonwealth* v. *Diaz*, 383 Mass. 73, 82-85 (1981). Trafficking and distribution of cocaine are not so closely related as to prevent conviction and punishment for both, so long as separate and distinct quantities of cocaine underlie the two charges; the Legislature intended to punish the distribution of one quantity of a drug separately from possession with intent to distribute the dealer's remaining stash. *Ibid.* Contrast *Commonwealth* v. *Chappee*, 397 Mass. 508, 523 (1986) (convictions under §§ 32A[*a*] and 32E[*b*] based on the same acts performed with the same cocaine are duplicative). Cf. *Commonwealth* v. *Ruggerio*, 32 Mass. App. Ct. 964, 966 (1992) (relying on Commonwealth's concession that convictions of possession and distribution were duplicative). In this case, the charges were based on distinct quantities of cocaine, the trafficking indictment being based on the eighty packets thrown out the rear window and the distribution charge arising from the bag sold to Detective Grice. Conviction and sentencing on both charges were therefore proper.

The judgments are affirmed. The defendant may raise his claim of grand jury impropriety by way of a motion for postconviction relief. Mass.R.Crim.P. 30, 378 Mass. 900 (1979).

*So ordered.*