COMMONWEALTH *vs.* JOSEPHINE CARRASQUIELLO
(and five companion cases[1]).

No. 97-P-0711.

Essex. September 16, 1998. - November 19, 1998.

Present: PORADA, GILLERMAN, & BECK, JJ.

*Probable Cause. Search and Seizure,* Probable cause. *Constitutional Law,* Search and seizure, Probable cause.

An affidavit in support of an application for a search warrant provided the magistrate with probable cause to issue the warrant. [777-778]

INDICTMENTS found and returned in the Superior Court Department on August 21, 1996.

Motions to suppress evidence were heard by *Robert H. Bohn, Jr.,* J.

An application for an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Nicole M. Procida,* Assistant District Attorney, for the Commonwealth.

*Margaret R. Guzman,* Committee for Public Counsel Services, for Josephine Carrasquiello.

*Mark B. Schmidt* for Jose Mercedes Padilla.

GILLERMAN, J. The defendants each are charged with trafficking in cocaine in violation of G. L. c. 94C, § 32E, possession of a class A substance with intent to distribute in violation of G. L. c. 94C, § 32, and two counts of possession with intent to distribute within a park or school zone in violation of G. L. c. 94C, § 32J. The Commonwealth has appealed from an

[1] Two of the companion cases are against Josephine Carrasquiello, and three are against Jose Mercedes Padilla.

interlocutory order of a judge of the Superior Court[2] suppressing drugs seized pursuant to a search warrant. The single issue is whether the affidavit supporting the warrant provided a substantial basis for the determination of probable cause by the magistrate.

The defendants' motions to suppress evidence were submitted to the judge on the pleadings and attachments. We draw the material facts from the affidavit of Timothy B. Ferrari, a Lynn police officer (officer), filed in support of the application for the search warrant. See *Commonwealth* v. *Jean-Charles*, 398 Mass. 752, 757 (1986) ("In appraising whether probable cause existed, we consider only the information revealed in the affidavit submitted to the issuing magistrate").

The narcotics unit of the Lynn police department (unit), of which the officer was a member, had recently received information that illegal drugs were being sold out of both second floor apartments at 108 South Common Street in Lynn (building). The information came from concerned neighbors, who wished to remain anonymous, and from named uniformed officers who patrol the area. While the affidavit identifies the officers by name, the officers did not file any supporting affidavits describing the source or content of their information.

Subsequent surveillance by unit officers revealed frequent occurrences of persons entering and leaving the building "at all hours" after a stay of only two to four minutes. That behavior, in the opinion of the experienced officer affiant, was consistent with a building whose occupants were involved in the buying and selling of illegal drugs. Moreover, in the past there had been "numerous" drug and drug-related arrests at the building.

The affidavit continues. The officer had received credible and detailed information from a reliable informant (informant) that within the past forty-eight hours he had observed the sale, for cash, of two "glassine type stamp bags" which the informant believed contained heroin. The sale occurred at the second floor *right* apartment of the building.[3]

We turn now to a second person, described in the affidavit as "CI," whose activity is the focus of this appeal. Within forty-eight hours preceding the affidavit, unit members, including the

---

[2]A single justice of the Supreme Judicial Court allowed the application for this interlocutory appeal.

[3]The credibility of the informant and the basis of the information he conveyed to the police are not at issue in this case.

officer, talked with CI, who "expressed interest in helping our unit which included the offer to make a controlled buy of illegal drugs." This led to CI agreeing to make a controlled buy of illegal drugs from the second floor *left* apartment at the building.

Thereupon, CI executed a controlled buy. See *Commonwealth v. Desper*, 419 Mass. 163, 168 (1994) (describing the usual procedure). CI was first searched; he had neither money nor drugs in his possession. He was provided with money and was then observed going to and entering the front door of 108 South Common Street. After about three minutes he came out of the building, and he remained in full view of the police until he reached and entered the police vehicle. CI made no stops either going to or returning from the building. However, neither the officer nor any other member of the unit observed CI enter the second floor left apartment or execute a drug transaction at that apartment.

When CI returned from the building, he turned over to the officers "a quantity" of glassine stamp bags containing a powdery substance which later tested positive for heroin. The police then searched him again and found neither drugs nor money. CI stated that he had made the purchase at the second floor left apartment of the building. He also reported the details of his approach to and entry into the second floor left apartment, including a description of the seller (Hispanic male, forty to forty-five years old, two hundred pounds, dark curly hair and a mustache)[4] and a detailed description of the arrangement and contents of the apartment.

On the basis of the affidavit, the magistrate found probable cause and issued a search warrant for the second floor left and second floor right apartments. The warrants were executed; the police seized one "bag" of cocaine and one "bag" of heroin from the second floor left apartment. The defendants' challenge is to the warrant for the search of the left apartment.

*Discussion.* The defendants argued below, and the court agreed, that (i) the controlled buy was not properly supervised by the police and therefore did not provide probable cause for the issuance of a search warrant, and (ii) the affidavit failed to establish the veracity of CI, and therefore his report to the police regarding the details of the controlled buy lacked reli-

---

[4]This description was substantially different from the description of the seller given to the police by the informant following his observations of drug transactions at the second floor right apartment in the building.

ability; that is to say, a controlled buy, standing alone, is insufficient to support a search warrant.

First, the defendants argued that the execution of the controlled buy was defective because the police did not see CI enter the left apartment. That omission did not defeat the importance of the controlled buy. In *Commonwealth* v. *Warren*, 418 Mass. 86 (1994), the site was a three-apartment building, and the affiant police officer did not observe the informant enter the apartment where the controlled buy allegedly occurred. The court found that the omission was "not fatal." *Id.* at 90. The police could consider the safety of their officers in not directly approaching the apartment, and the magistrate was entitled to make reasonable inferences based on the information provided by the informant and the observations of the police. "Probable cause does not require a showing that the police had resolved all their doubts." *Ibid.*, quoting from *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 598-599 (1991). "In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Commonwealth* v. *Warren, supra*, quoting from *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982) (other citation omitted).

As to the second argument, we agree that the affidavit does not establish the veracity of CI, but CI was not an informant. There is nothing in the affidavit which suggests that CI gave any information to the police about either the building or the second floor apartments other than his report following the controlled buy. He was a volunteer who, according to the affidavit, offered to "help" the unit by making a controlled buy without "promises, rewards, or inducements." The building, and the two second floor apartments under scrutiny, had been identified by anonymous neighbors, and the suspicious activity suggesting illegal drug activity at the building had been observed by the police. CI did not participate in the development of any of this information. It was the police who gave CI the information regarding a controlled buy at the second floor apartment on the left. In short, CI was a stranger to the scene until he volunteered to execute the controlled buy at the second floor left apartment. When CI performed the buy, he was merely an agent of the police, see *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 535 (1992), not a confidential

informant seeking corroboration of his own veracity. See Smith, Criminal Practice and Procedure § 197, at 141 (2d ed. 1983) (an informer "is an undisclosed person who confidentially volunteers material information in regard to violations of law to police officers").

There remains the question of the reliability of CI's report regarding the controlled buy, since CI himself is of unknown reliability. Two recently reported cases which are close to the facts in this case are *Commonwealth* v. *Warren, supra,* and *Commonwealth* v. *Desper,* 419 Mass. at 168-171.[5] In *Commonwealth* v. *Warren,* certain detailed information provided by the informant, "combined with a 'controlled buy' supervised by the police . . . was sufficient to satisfy the veracity prong" regarding the informant. 418 Mass. at 91.

In *Commonwealth* v. *Desper,* the controlled buyer was an informant who had reported numerous occasions of illegal drug sales at a particular location, but his reliability had not been established in the affidavit. The result, defendant argued, was "a buy that relies on the veracity of an informant whose veracity has not otherwise been proven." 419 Mass. at 169. However, the affiant officer included in his affidavit the results of his surveillance of the multi-apartment building at issue in those proceedings, including the verification of the criminal background of certain persons, including the defendant, whom the officer saw entering and leaving the building. Rejecting the defendant's argument, the court concluded that, "[b]ased on the information furnished by [the affiant officer], . . . the magistrate who authorized the warrant could reasonably conclude that this supervised purchase of narcotics was sufficient to establish[] the reliability of the informant . . . ." *Id.* at 171.[6] See *Commonwealth* v. *Richardson,* 37 Mass. App. Ct. 482, 486-487 (1994) (controlled buy, combined with other indicia of the informant's reliability, demonstrated the informant's veracity which, in turn, provided probable cause).

*Warren, Desper,* and *Richardson* all credit the information regarding the details of the controlled buy provided by an

[5]For an early decision regarding the probative value of a controlled buy, see *Commonwealth* v. *Benlien,* 27 Mass. App. Ct. 834, 838-839 (1989).

[6]In *Commonwealth* v. *Warren,* 418 Mass. at 87, the police were unable to see the informant actually enter the suspected apartment and execute the controlled buy; in *Commonwealth* v. *Desper,* 419 Mass. at 168-169, the police officer neglected to search the informant before the controlled buy.

Commonwealth v. Carrasquiello.

informant. This was because, in each case, the controlled buy — itself providing a measure of reliability because it was closely supervised by the police — was consistent with the information earlier provided by the informant, thereby establishing the reliability of the informant for probable cause purposes.

In this case CI was not an informant who had earlier provided inculpatory information which the controlled buy corroborated. Thus the Commonwealth argues that the controlled buy, "standing alone," is sufficient to provide probable cause.[7] We need not reach that suggestion, for the affidavit provided sufficient information to establish probable cause.

The magistrate was provided with information that anonymous, concerned neighbors had reported to the police that illegal drug activity was occurring at both second floor apartments in the building; that the police had conducted their own surveillance of the building which tended to confirm the information the police had received from the neighbors; that a reliable informant had witnessed the purchase of illegal drugs at the second floor right apartment, corroborating part of the information received from anonymous neighbors; that it was the police, not CI, who identified the place for the controlled buy (compare *Commonwealth* v. *Richardson, supra* at 487), thus making it highly unlikely that CI could have planned to set someone up for an illegal search; that the informant's description (unknown to CI) of the seller at the second floor right apartment differed substantially from CI's description of the seller at the second floor left apartment, suggesting the reliability of CI's information; that the controlled buy by CI had been closely supervised by the police; and that CI's detailed report of the controlled buy, being consistent with the information provided by anonymous sources and with the observations made by the informant regarding the distinct description of the

---

[7]It does not appear that there is yet a reported decision in Massachusetts holding that a controlled buy, *standing alone*, provides probable cause for a search warrant. *Commonwealth* v. *Luna*, 410 Mass. 131, 134 (1991), has been cited in this regard, but that decision relies on the use of bills with serial numbers set forth in the affidavit as additional information providing probable cause. See *id.* at 134. All three Massachusetts decisions discussed here (*Warren, Desper,* and *Richardson*) treat the controlled buy merely as corroboration of the informant's reliability. See, however, *Matthews* v. *State*, 59 Md. App. 15, 18-19 (1984); *People* v. *Williams*, 139 Mich. App. 104, 107-108 (1984); *State* v. *Wahl*, 450 N.W.2d 710, 716 (N.D. 1990), all holding that a controlled buy, alone, provides probable cause.

seller in the second floor right apartment, conveyed its own reliability.

We need not consider whether, or the extent to which, each of these factors contributes to the necessary finding of probable cause. We conclude that the information contained in the affidavit, taken in the aggregate, provided a substantial basis for the magistrate to conclude, as he did, that there was probable cause to believe that illegal drug activity was taking place at the second floor left apartment at the building.

The order of the Superior Court allowing the motions to suppress is reversed. An order shall enter denying the motions to suppress.

*So ordered.*