NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1035                                      Appeals Court

COMMONWEALTH  vs.  RADHAMES GONZALEZ.

No. 16-P-1035.

Middlesex.      September 12, 2017. - March 12, 2018.

Present:  Rubin, Neyman, & Henry, JJ.

Controlled Substances. Firearms. Practice, Criminal, Motion to
     suppress, Confrontation of witnesses. Constitutional Law,
     Search and seizure, Investigatory stop, Reasonable
     suspicion, Confrontation of witnesses. Search and Seizure,
     Motor vehicle, Reasonable suspicion, Threshold police
     inquiry. Threshold Police Inquiry. Motor Vehicle,
     Firearms. Witness, Expert. Evidence, Expert opinion,
     Scientific test.


     Indictments found and returned in the Superior Court
Department on October 31, 2013.

     A pretrial motion to suppress evidence was heard by Thomas
P. Billings, J., and the cases were tried before him.


     Steven J. Rappaport for the defendant.
     Clarence H. Brown, Assistant District Attorney, for the
Commonwealth.


     HENRY, J.  After a jury trial in Superior Court, the

defendant, Radhames Gonzalez, was convicted of possession of

cocaine with intent to distribute, carrying a firearm without a

license, possession of ammunition without a firearm identification card, possession of a large capacity feeding device, and possession of a large capacity weapon during the commission of a felony.[1]  The defendant argues that (1) his motion to suppress should have been allowed because the information supplied by a confidential informant (CI) did not justify the investigatory stop of his motor vehicle; and (2) the admission in evidence of a substitute chemist's testimony deprived the defendant of his right to "confront" the witness. We affirm.

Background.  We set forth the facts as found by the motion judge, supplemented where necessary with uncontroverted evidence drawn from the record of the suppression hearing.  See Commonwealth v. Watson, 430 Mass. 725, 726 n.5 (2000).

Sergeant William West of the Billerica police department testified that he had been a patrol sergeant for two years, and that he had formerly been a detective in the criminal bureau for sixteen years.  As a detective, he had investigated all types of crimes including narcotics offenses and had worked with informants "no less than a hundred times."  In June, 2013, about one year after he had become a sergeant, West was contacted by a

---

[1] The defendant then waived his right to a jury and was tried before the judge on sentence enhancements connected with two of the firearms charges.  A motion for a required finding of not guilty was allowed as to both enhancements.

CI with whom West had worked on more than one occasion when he was a detective.

On this occasion, the CI provided a description of a man who went by the name of "Eddie," later identified as the defendant, who was dealing heroin and cocaine in and around the Gaelic Club (club) in Lowell. The CI described the defendant as a Dominican male who drove a white Buick Rendezvous CXL sport utility vehicle bearing license plate 676 NB4. The CI indicated that on Friday nights the defendant used the club as a base of operation and that the CI personally observed the defendant make cocaine sales in the club's bathroom. The CI also indicated that the defendant would receive telephone calls and travel to individuals' homes to sell drugs. The CI also told West that the defendant usually carried a firearm and the CI believed the defendant did not have a valid driver's license.

Because West was no longer involved in narcotics investigations and because the club was in Lowell, not Billerica, he passed the CI's tip and contact number to Sergeant Noone of the Lowell police department. West explained to Noone that the CI was an informant who had been "signed up by Billerica" and had been reliable in the past, including having given information that led to arrests and seizures. Noone assigned the matter to Lowell police Detective Rafael Rivera. When Rivera spoke by phone with the CI, the CI repeated what he

had disclosed to West and that he had seen the defendant in the club only a "couple of days before," in possession of drugs and his gun. Rivera ran the license plate number the CI had given him and the records showed that the vehicle was registered to Kennedy Ruiz-Mejia.[2]

On Friday, June 28, 2013, at about 7:25 P.M., Rivera and three other undercover officers, in four separate vehicles, set up surveillance around the club. Rivera saw a vehicle matching the make, model, license plate, and color supplied by the CI. After a few minutes, a man matching the description of "Eddie" exited the club, got into the vehicle, and drove away. When the vehicle turned into a gasoline station, Lowell police Detective Michael Kandrotas pulled in behind it, activating the concealed lights and siren on his unmarked cruiser.

Kandrotas exited his vehicle and, as he approached, observed the driver make a quick movement to his right, as if to toss something into the back seat. Because the defendant had been reported to carry a firearm, Kandrotas had the defendant exit the vehicle. Rivera joined Kandrotas and recognized the defendant as someone he knew from prior narcotics investigations.

---

[2] After the defendant was arrested, Rivera learned that Ruiz-Mejia had passed away in 2011.

Rivera confirmed through dispatch that the defendant did not have a current driver's license. The defendant was placed under arrest for operating a vehicle without a license. Rivera searched the defendant and found $5,100 on his person. The defendant was transported to the police station. During booking, it was determined that the defendant had an alias of Eddie Mambru.

Because the defendant's vehicle was blocking a gasoline pump, and the police were going to search it, the police moved it across the street to a school parking lot after the defendant was arrested. The Lowell inventory policy, which was introduced at the motion hearing, provides for the inventory and towing of a vehicle that was, or is, being used in the commission of a crime. When police opened the rear door, they observed a loaded .40 caliber semiautomatic handgun poorly concealed in a sock on the floor. In a second sock, police recovered twenty-seven bags, each containing a powder later confirmed to be cocaine.

The motion judge found that the police had conducted an investigatory stop based on information supplied by the CI. The judge recognized that in such circumstances, the CI's information must establish both the reliability and basis of knowledge prongs set forth under the Aguilar-Spinelli test.[3] The

---

[3] Under the Aguilar-Spinelli test, "[t]o establish the reliability of the information under art. 14 [of the

judge reasoned that "'[b]ecause the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible' . . . [and] independent police corroboration may 'make up for deficiencies in one or both of these factors.'" Commonwealth v. Pinto, 476 Mass. 361, 364 (2017), quoting from Commonwealth v. Depina, 456 Mass. 238, 243 (2010).

Applying this standard, the judge ruled that the CI's basis of knowledge was self-evident from the tip and founded on personal observation. On the veracity prong, according to West, "The information [the CI] provided allowed [West] to seize various types of narcotics, make drug seizures and drug arrests, as well as seizing money, the proceeds of drug profits." Through cross-examination, defense counsel elicited that individuals who make controlled buys are considered to be "informant[s]"; that "if [a] person had, in fact, made a series of purchases on behalf of the Billerica [p]olice [d]epartment, [West] could honestly say that that individual had provided [West] with information that if it did lead to arrest, to arrest

Massachusetts Declaration of Rights], 'the Commonwealth must show the basis of knowledge of the source of the information (the basis of knowledge test) and the underlying circumstances demonstrating that the source of the information was credible or the information reliable (veracity test).'" Commonwealth v. Anderson, 461 Mass. 616, 622, cert. denied, 568 U.S. 946 (2012), quoting from Commonwealth v. Mubdi, 456 Mass. 385, 395-396 (2010). See Aguilar v. Texas, 378 U.S. 108 (1964); Spinelli v. United States, 393 U.S. 410 (1969).

and seizure . . . "; and that, specifically, this CI had previously made controlled buys for the Billerica police department. The Commonwealth did not ask West on redirect examination whether the CI previously had been a tipster and not merely a controlled buyer. The judge specifically found: "I understand [West's] testimony to mean that the CI supplied substantive information as well as helping with controlled buys." The judge also found that knowledge of the CI's past track record of reliability with Billerica, which was conveyed to Lowell, was sufficient to "satisf[y] the veracity test."

Discussion. 1. Motion to suppress. a. The stop. "In reviewing a denial of a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error, but conduct an independent review of the judge's ultimate findings and conclusions of law." Commonwealth v. Washington, 449 Mass. 476, 480 (2007).

Here, because there is no live dispute regarding the CI's basis of knowledge, given the CI's personal observations of the defendant in possession of drugs and a gun only days prior to the tip, we focus on the evidence of the CI's veracity. The motion judge gave West's testimony regarding the CI's prior track record its plain and ordinary meaning, namely that on more than one previous occasion the CI had directly provided material information regarding violations of the law and, further, that

the CI provided "substantive information."  The judge's finding of fact comports with the language West used, the testimony that the informant had been reliable in the past, and the common situation presented in police work in which a CI provides material information regarding criminal violations and is then engaged to execute a controlled buy.[4]  See, e.g., Commonwealth v. Perez-Baez, 410 Mass. 43, 44-46 (1991) (recitation that informant had "provided information" previously that led to arrests and seizure of cocaine sufficiently established informant's veracity); Commonwealth v. Mendes, 463 Mass. 353, 365 (2012) (CI provided information and made controlled buy); Commonwealth v. Baldasaro, 62 Mass. App. Ct. 925, 926 (2004) (same); Commonwealth v. Velez, 77 Mass. App. Ct. 270, 273 (2010) (same); Commonwealth v. Lima, 80 Mass. App. Ct. 114, 119 n.5 (2011) (same); Commonwealth v. Perez, 90 Mass. App. Ct. 548, 554 (2016) (same).

---

[4] We also note that the CI knew specifically to telephone West to convey information regarding an individual's illegal drug sales in this case and that in anticipation of that conversation he had obviously noted the make, model, registration number, and color of that individual's vehicle, together with his method of operation, which suggests at least a likelihood that this was not his first tip.  Additionally, we note that the detectives did corroborate several pieces of information from the CI before the stop, including the make, model, color, and license plate number of the vehicle that the defendant would be driving.  However, corroboration of innocent details "only slightly" enhances the CI's reliability and is insufficient on its own to satisfy the veracity prong.  See Commonwealth v. Lyons, 409 Mass. 16, 21 (1990).

The defendant contends that there was a possible alternative interpretation of West's testimony:  that in the past the CI <u>could</u> have been only a controlled buyer who had not provided information, which would be insufficient to establish the CI's veracity.  See <u>Commonwealth</u> v. <u>Carrasquiello</u>, 45 Mass. App. Ct. 772, 775-776 (1998) (differentiating between confidential informants as tipsters and controlled buyers for purposes of veracity).[5]  This argument is insufficient to show clear error in the motion judge's findings of fact.

First, on a motion to suppress, "[q]uestions of credibility are the province of the motion judge who had the opportunity to observe the witnesses."  <u>Commonwealth</u> v. <u>Tremblay</u>, 460 Mass. 199, 205 (2011).  Second, and more importantly, that the Commonwealth or the motion judge might have asked what seems, possibly only in hindsight, an obvious follow-up question to confirm that the CI previously had been a tipster, rather than merely a controlled buyer, does not allow us to reverse.  Where the judge's finding "is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the [finder] of fact, it would have weighed the evidence differently.  Where

---

[5] <u>Carrasquiello</u> involved the question of probable cause for a search warrant for entry into a home, whereas this case involves the lesser standard of reasonable suspicion, and a <u>Terry</u> stop on the street.  See <u>Terry</u> v. <u>Ohio</u>, 392 U.S. 1 (1968).

there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 203 (1986), quoting from Anderson v. Bessemer City, 470 U.S. 564, 673-574 (1985). See Commonwealth v. Carr, 458 Mass. 295, 303 (2010); Commonwealth v. Gordon, 87 Mass. App. Ct. 322, 327 (2015).

Moreover, that the defense interpretation of West's testimony may be possible does not make it probable or an inference the motion judge must draw. A court considers the application for a search warrant, or here whether there was reasonable suspicion to conduct a stop, "in an ordinary, commonsense manner without hypertechnical analysis." Perez-Baez, 410 Mass. at 46, quoting from Commonwealth v. Melendez, 407 Mass. 53, 60 (1990) (Greaney, J., dissenting). See Commonwealth v. Blake, 413 Mass. 823, 827 (1992) (search warrant affidavits should be "read as a whole, not parsed, severed, and subjected to hypercritical analysis"). "The standard of reasonable suspicion[, which is lower than the standard of probable cause,] does not require absolute certainty, but only 'sufficient probability,' 'the sort of "common-sense conclusio[n] about human behavior" upon which "practical people" -- including government officials -- are entitled to rely.'"

Commonwealth v. Buccella, 434 Mass. 473, 486 (2001), quoting from New Jersey v. T.L.O., 469 U.S. 325, 346 (1985).[6]

b. The search of the vehicle. Similarly unavailing is the defendant's claim that the search of the vehicle was unreasonable. After the defendant was arrested, because his vehicle was blocking the pumps at a gasoline station that was open for business, the police moved the vehicle across the street. Regardless of how the police described the ensuing search, the incriminating objects found during the search would have been discovered during the inevitable inventory search conducted before police had the vehicle towed. See, e.g., Commonwealth v. Miller, 366 Mass. 387, 389 (1974) (finding search constitutional even though "the officers did not completely and correctly articulate their grounds," where "from an objective standpoint probable cause existed"); Commonwealth

_____

[6] At oral argument, the defendant added that the Lowell police could not rely on the track record of the CI established with the Billerica police department to establish the CI's reliability because they did not know the details of that track record and were not working collaboratively on the investigation with Billerica, citing Commonwealth v. Hawkins, 361 Mass. 384, 386-387 (1972) (collective knowledge doctrine did not apply because officers who seized bonds during search for drugs within the defendant's apartment were neither aware of theft of bonds nor working in concert with officers who had knowledge of the stolen bonds). Generally, we will not consider arguments not raised in a party's brief. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any event, the argument has no merit. Here, the Lowell police were informed that the CI was reliable by the Billerica police, and "[a] law enforcement officer who provides information is presumed credible." Commonwealth v. Watson, 36 Mass. App. Ct. 252, 253 n.1 (1994).

v. Somers, 44 Mass. App. Ct. 920, 922-923 (1998) (police discovery during automobile stop that defendant had no license warranted order that car be towed); Commonwealth v. Bienvenu, 63 Mass. App. Ct. 632, 634-635 (2005) (after police stopped car for safety infraction, subsequent tow and inventory search were proper because "neither defendant could lawfully drive the car").

2. Testimony of substitute chemist. The defendant argues that testimony of a substitute chemist regarding the makeup of the substance seized from the defendant's vehicle violated his rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights to confront and meet face to face the witnesses against him, and that the Commonwealth did not sufficiently prove the unavailability of the original chemist.[7]

Testimony by an expert where he or she "draws upon testing conducted and results reached by other analysts[] who do not testify . . . is permissible provided that the testifying analyst 'reviewed the nontestifying analyst's work, . . . conducted an independent evaluation of the data,' and 'then expressed [his or] her own opinion, and did not merely act as a conduit for the opinions of others.'" Commonwealth v. Jones,

_____

[7] At trial, the prosecutor represented that the original chemist had left the laboratory and it was unknown whether she was still working as a chemist for the Commonwealth.

472 Mass. 707, 715 (2015), quoting from Commonwealth v. Greineder, 464 Mass. 580, 595 (2013).  See Greineder, supra at 603 (no violation of Sixth Amendment or art. 12, even where testifying analyst based her opinion on test results of nontestifying analyst that were not admitted in evidence).  Unavailability is not a prerequisite to calling a substitute chemist, provided the substitute chemist can be cross-examined on how he or she reached his or her opinion.  See id. at 594-599.

The Commonwealth introduced the testimony of Paul Eyerly, a chemist with the State police drug unit in Sudbury, who testified as to his own independent opinion of the composition of the substances in question based on tests performed and results obtained by the original chemist.  The defendant cross-examined Eyerly regarding the basis on which he formed his opinion, the testing procedures used, and their susceptibility to human error.  We discern no error or any violation of the defendant's right to confront the witnesses against him under the United States Constitution or the Massachusetts Declaration of Rights.

Judgments affirmed.

RUBIN, J. (dissenting). I dissent from the court's holding that the police had reasonable suspicion to stop the defendant. Since all evidence discovered was the fruit of an unconstitutional stop, the motion to suppress should have been allowed.

In this case, a confidential informant described a Dominican male who drove a white Buick Rendezvous CXL sport utility vehicle of which the confidential informant recited the license plate number. The confidential informant indicated that on Friday nights the man could be found at the Gaelic Club. He said that the man used it as a base of operation, traveling to individuals' homes to sell drugs, and that he personally observed the man make cocaine sales in the club's bathroom. The confidential informant also told the police that the man usually carried a firearm and that he believed the man did not have a valid driver's license.

The police ran the license plate numbers and determined that the car was registered to a Kennedy Ruiz-Mejia. They did not ascertain whether Ruiz-Mejia had an active driver's license or a license to carry a firearm. They then set up surveillance outside the Gaelic Club on a Friday night and saw the car, and when a Hispanic-appearing male, the defendant, left the club, got in, and drove away, the police stopped the car. They had

not entered the club.  They had not seen the defendant engage in drug sales or any other suspicious activity.

Under Massachusetts law, we utilize the two-pronged Aguilar-Spinelli test[1] to determine whether a tip can provide the reasonable suspicion that criminality is afoot necessary to allow an investigative stop.  The veracity prong requires the Commonwealth to demonstrate "that the source of the information was credible or the information reliable."  Commonwealth v. Depiero, 473 Mass. 450, 454 (2016).  The central issue in this case, as the court recognizes, is the veracity of the confidential informant.

The court also recognizes, and I agree, that, as the motion judge also correctly concluded, the Commonwealth could have established the informant's veracity only by showing that the informant had been a tipster in the past, and not merely a controlled buyer.  This is because, while it is well established that an informant's history of providing tips leading to the seizure of narcotics can establish the informant's veracity, see Commonwealth v. Perez-Baez, 410 Mass. 43, 45 (1991), as we have held, one who merely participates in controlled buys is a person of "unknown reliability."  Commonwealth v. Carrasquiello, 45 Mass. App. Ct. 772, 776 (1998).  See id. at 774-777

---

[1] See Aguilar v. Texas, 378 U.S. 108 (1964); Spinelli v. United States, 393 U.S. 410 (1969).

(distinguishing the veracity of tipsters from that of controlled buyers).  This is because while buying drugs on behalf of the police does provide them with information, it does not entail providing them with any information the police have not generated themselves.  See ibid.  See also Commonwealth v. Desper, 419 Mass. 163, 168 (1994) (describing the process of controlled buys).

And, while corroboration of certain details of a tip can lead to a conclusion that the person who provided it was truthful, confirmation only of the publicly-knowable and not suspicious facts provided by the tipster that a person who drives a certain car goes to a particular club on Friday evenings is insufficient to demonstrate the veracity of the tipster's claim that the person also engages in unlawful conduct.  See Commonwealth v. Lyons, 409 Mass. 16, 20-21 (1990) ("[T]he quantity and quality of the details corroborated by the police were simply insufficient to establish any degree of suspicion that could be deemed reasonable.  The trooper was able to verify only the description of the automobile, the direction in which it was headed, and the race and gender of the occupants before making the stop. . . .  [T]he informant's reliability was only slightly enhanced by this corroboration because the police verified no predictive details that were not easily obtainable by an uninformed bystander. . . .  Significantly . . . these

defendants displayed no suspicious behavior that might have heightened police concern. Anyone can telephone the police for any reason").

In this case, the only evidence of the informant's past involvement with the police came from Sergeant William West's testimony. On direct examination, he testified that, in the past, the informant had provided "information" that led to drug arrests and the seizure of money and narcotics.

In cross-examination, though, the defendant's experienced counsel asked Sergeant West, "And if [an individual utilized by the Billerica police department to make controlled buys] had, in fact, made a series of purchases on behalf of the Billerica [p]olice [d]epartment, you could honestly say that that individual had provided you with information that if it did lead to arrest, to arrest and seizure, is that fair to say?" The sergeant said, "Yes." Counsel then asked, "In the past was [the informant in this case] able to make controlled buys for you when you did use him as an informant for the Billerica [p]olice [d]epartment?" Again, the sergeant said, "Yes."

The Commonwealth bears the burden of demonstrating the lawfulness of the seizure and thus in this case, in order to demonstrate the veracity of the tip, that the confidential informant had previously acted as a tipster and not merely as a controlled buyer. Defense counsel's careful cross-examination

made clear that, according to Sergeant West himself, even if one had taken Sergeant West's direct testimony to mean that the informant had provided tips in the past, that was not necessarily its meaning. While West's testimony left open the possibility that the confidential informant might have been a tipster as well as a controlled buyer, the officer's direct testimony did not mean that the informant was such a tipster.

The Commonwealth could have clarified the matter on redirect by asking Sergeant West whether the informant had ever provided tips. It declined to do so. Perhaps this was because it knew that the confidential informant in fact was not a tipster; perhaps it was not. But in either event, the Commonwealth, which, it bears repeating, has the burden here, left a record in which there was insufficient evidence to support the finding, necessary to the motion judge's conclusion that the search was lawful, that the confidential informant had previously been a tipster, not only a controlled buyer.[2]

The Commonwealth recognized this below, and did not even argue before the judge that the evidence supported a finding that the confidential informant was a tipster. Defense counsel

---

[2] The court suggests in a footnote that the facts that the informant called Sergeant West with information regarding the defendant's drug sales, and that he had noted the description of the car, suggests "at least a likelihood that this was not his first tip." But calling a police officer to tell him someone is dealing drugs at a particular place and describing his car hardly indicates that one has done so before.

argued: "At no time did the sergeant ever say that this informant was a tipster. . . . I didn't ask him. My brother didn't ask him. . . . [A]ll we know about this person, this informant" is that "[h]e has performed controlled buys successfully . . . . We don't know whether he was ever a tipster. [West] was never asked."

The Commonwealth did not disagree, arguing only (and incorrectly) that any information leading to "an arrest and seizure of contraband substances was by itself sufficient to establish reliability," and that, coupled with the details that were corroborated, it was sufficient.[3]

The court majority addresses the state of the record with respect to the confidential informant by saying first that we must defer to the motion judge's assessment of Sergeant West's credibility. Of course we must. But the issue is not whether Sergeant West is credible, nor did the judge say it was.[4] The

---

[3] Even here, on appeal, the Commonwealth does not explain what supported the judge's finding, asserting without elaboration only that the "weight and credibility of testimony are functions of [the] motion judge, and factual findings will stand absent clear error."

[4] The support for the judge's finding that the informant had provided tips in the past was limited to quoting Sergeant West's testimony that the informant had more than once provided "information" leading to arrests and seizures of drugs and money, and drawing the following inadequately-supported inference therefrom: "I understand this testimony to mean that the CI supplied substantive information as well as helping with controlled buys, which he also did, and I so find."

issue is what Sergeant West said. I assume he was perfectly credible. His testimony, though, cannot support a finding that the confidential informant provided tips in the past. It is silent on that question.

The court majority then suggests that the "more important[]" reason we must affirm is that we must defer to the fact finder's choice between "two permissible views of the evidence." Ante at    . That statement of black letter law is of course true as well, but it is equally irrelevant.

To illustrate the point: If there were testimony that an event happened on a weekend, a judge could not infer solely on that basis that the day on which it happened was a Saturday rather than a Sunday. That would not be a case in which one could draw one of two permissible inferences from the evidence in the record (i.e., that it happened on a Saturday or that it happened on a Sunday). It would be one in which there was insufficient evidence in the record to support a conclusion on the matter in either direction. The event might have happened on a Saturday. Or it might have happened on a Sunday. But there is no basis upon which a fact finder could, without more, determine which one. And if it was one party's burden to prove the event happened on a Saturday, that party would have failed to meet its burden.

That is precisely this case. Whatever one might have thought initially about Sergeant West's direct testimony, given his own clarification on cross-examination, it meant only that the confidential informant might have been a tipster (and a controlled buyer as well), or that he might have been only a controlled buyer. But there was no evidence in the record to support the judge's conclusion that the informant was the former rather than the latter. Choosing between two different possible factual scenarios, either of which might have happened, where there is no evidence in the record about which one actually did occur, is far different than choosing between two permissible views of the evidence in the record, and there would be little left of the rule of law if we eliminated that distinction.

Because the Commonwealth did not provide sufficient evidence to support a positive finding about the veracity of the confidential informant, it failed to demonstrate the reasonable suspicion necessary for the initial stop of the defendant's vehicle. While I have no quarrel with the rest of the majority's analysis, because all the evidence seized was fruit of that unlawful stop, it should have been suppressed. With respect, I therefore dissent.