RUBIN, J. (dissenting).
I dissent from the court's holding that the police had reasonable suspicion to stop the defendant. Since all evidence discovered was the fruit of an unconstitutional stop, the motion to suppress should have been allowed.
In this case, a confidential informant described a Dominican male who drove a white Buick Rendezvous CXL sport utility vehicle of which the confidential informant recited the license plate number. The confidential informant indicated that on Friday nights the man could be found at the *726 Gaelic Club. He said that the *14 man used it as a base of operation, traveling to individuals' homes to sell drugs, and that he personally observed the man make cocaine sales in the club's bathroom. The confidential informant also told the police that the man usually carried a firearm and that he believed the man did not have a valid driver's license.
The police ran the license plate numbers and determined that the car was registered to a Kennedy Ruiz-Mejia. They did not ascertain whether Ruiz-Mejia had an active driver's license or a license to carry a firearm. They then set up surveillance outside the Gaelic Club on a Friday night and saw the car, and when a Hispanic-appearing male, the defendant, left the club, got in, and drove away, the police stopped the car. They had not entered the club. They had not seen the defendant engage in drug sales or any other suspicious activity.
Under Massachusetts law, we utilize the two-pronged Aguilar-Spinelli test[1] to determine whether a tip can provide the reasonable suspicion that criminality is afoot necessary to allow an investigative stop. The veracity prong requires the Commonwealth to demonstrate "that the source of the information was credible or the information reliable." Commonwealth v. Depiero, 473 Mass. 450, 454, 42 N.E.3d 1123 (2016). The central issue in this case, as the court recognizes, is the veracity of the confidential informant.
The court also recognizes, and I agree, that, as the motion judge also correctly concluded, the Commonwealth could have established the informant's veracity only by showing that the informant had been a tipster in the past, and not merely a controlled buyer. This is because, while it is well established that an informant's history of providing tips leading to the seizure of narcotics can establish the informant's veracity, see Commonwealth v. Perez-Baez, 410 Mass. 43, 45, 570 N.E.2d 1026 (1991), as we have held, one who merely participates in controlled buys is a person of "unknown reliability." Commonwealth v. Carrasquiello, 45 Mass. App. Ct. 772, 776, 702 N.E.2d 384 (1998). See id. at 774-777, 702 N.E.2d 384 (distinguishing the veracity of tipsters from that of controlled buyers). This is because while buying drugs on behalf of the police does provide them with information, it does not entail providing them with any information the police have not generated themselves. See ibid. See also Commonwealth v. Desper, 419 Mass. 163, 168, 643 N.E.2d 1008 (1994) (describing the process of controlled buys).
*15 And, while corroboration of certain details of a tip can lead to a conclusion that the person who provided it was truthful, confirmation only of the publicly-knowable and not suspicious facts provided by the tipster that a person who drives a certain car goes to a particular club on Friday evenings is insufficient to demonstrate the veracity of the tipster's claim that the person also engages in unlawful conduct. See Commonwealth v. Lyons, 409 Mass. 16, 20-21, 564 N.E.2d 390 (1990) ("[T]he quantity and quality of the details corroborated by the police were simply insufficient to establish any degree of suspicion that could be deemed reasonable. The trooper was able to verify only the description of the automobile, the direction in which it was headed, and the race and gender of the occupants before making the stop.... [T]he informant's reliability was only slightly enhanced by this corroboration because the police verified no predictive details that were not easily obtainable by an uninformed bystander.... Significantly ... these defendants displayed no suspicious *727 behavior that might have heightened police concern. Anyone can telephone the police for any reason").
In this case, the only evidence of the informant's past involvement with the police came from Sergeant William West's testimony. On direct examination, he testified that, in the past, the informant had provided "information" that led to drug arrests and the seizure of money and narcotics.
In cross-examination, though, the defendant's experienced counsel asked Sergeant West, "And if [an individual utilized by the Billerica police department to make controlled buys] had, in fact, made a series of purchases on behalf of the Billerica [p]olice [d]epartment, you could honestly say that that individual had provided you with information that if it did lead to arrest, to arrest and seizure, is that fair to say?" The sergeant said, "Yes." Counsel then asked, "In the past was [the informant in this case] able to make controlled buys for you when you did use him as an informant for the Billerica [p]olice [d]epartment?" Again, the sergeant said, "Yes."
The Commonwealth bears the burden of demonstrating the lawfulness of the seizure and thus in this case, in order to demonstrate the veracity of the tip, that the confidential informant had previously acted as a tipster and not merely as a controlled buyer. Defense counsel's careful cross-examination made clear that, according to Sergeant West himself, even if one had taken Sergeant West's direct testimony to mean that the informant had *16 provided tips in the past, that was not necessarily its meaning. While West's testimony left open the possibility that the confidential informant might have been a tipster as well as a controlled buyer, the officer's direct testimony did not mean that the informant was such a tipster.
The Commonwealth could have clarified the matter on redirect by asking Sergeant West whether the informant had ever provided tips. It declined to do so. Perhaps this was because it knew that the confidential informant in fact was not a tipster; perhaps it was not. But in either event, the Commonwealth, which, it bears repeating, has the burden here, left a record in which there was insufficient evidence to support the finding, necessary to the motion judge's conclusion that the search was lawful, that the confidential informant had previously been a tipster, not only a controlled buyer.[2]
The Commonwealth recognized this below, and did not even argue before the judge that the evidence supported a finding that the confidential informant was a tipster. Defense counsel argued: "At no time did the sergeant ever say that this informant was a tipster.... I didn't ask him. My brother didn't ask him.... [A]ll we know about this person, this informant" is that "[h]e has performed controlled buys successfully.... We don't know whether he was ever a tipster. [West] was never asked."
The Commonwealth did not disagree, arguing only (and incorrectly) that any information leading to "an arrest and seizure of contraband substances was by itself sufficient to establish reliability," and that, coupled with the details that were corroborated, it was sufficient.[3]
*728 The court majority addresses the state of the record with respect to the confidential informant by saying first that we must defer to the motion judge's assessment of Sergeant West's credibility. Of course we must. But the issue is not whether Sergeant *17 West is credible, nor did the judge say it was.[4] The issue is what Sergeant West said. I assume he was perfectly credible. His testimony, though, cannot support a finding that the confidential informant provided tips in the past. It is silent on that question.
The court majority then suggests that the "more important[ ]" reason we must affirm is that we must defer to the fact finder's choice between "two permissible views of the evidence." Ante at 11, 96 N.E.3d at 728. That statement of black letter law is of course true as well, but it is equally irrelevant.
To illustrate the point: If there were testimony that an event happened on a weekend, a judge could not infer solely on that basis that the day on which it happened was a Saturday rather than a Sunday. That would not be a case in which one could draw one of two permissible inferences from the evidence in the record (i.e., that it happened on a Saturday or that it happened on a Sunday). It would be one in which there was insufficient evidence in the record to support a conclusion on the matter in either direction. The event might have happened on a Saturday. Or it might have happened on a Sunday. But there is no basis upon which a fact finder could, without more, determine which one. And if it was one party's burden to prove the event happened on a Saturday, that party would have failed to meet its burden.
That is precisely this case. Whatever one might have thought initially about Sergeant West's direct testimony, given his own clarification on cross-examination, it meant only that the confidential informant might have been a tipster (and a controlled buyer as well), or that he might have been only a controlled buyer. But there was no evidence in the record to support the judge's conclusion that the informant was the former rather than the latter. Choosing between two different possible factual scenarios, either of which might have happened, where there is no evidence in the record about which one actually did occur, is far different than choosing between two permissible views of the evidence in the record, and there would be little left of the rule of law if we eliminated that distinction.
*18 Because the Commonwealth did not provide sufficient evidence to support a positive finding about the veracity of the confidential informant, it failed to demonstrate the reasonable suspicion necessary for the initial stop of the defendant's vehicle. While I have no quarrel with the rest of the majority's analysis, because all the evidence seized was fruit of that unlawful stop, it should have been suppressed. With respect, I therefore dissent.

See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The court suggests in a footnote that the facts that the informant called Sergeant West with information regarding the defendant's drug sales, and that he had noted the description of the car, suggests "at least a likelihood that this was not his first tip." But calling a police officer to tell him someone is dealing drugs at a particular place and describing his car hardly indicates that one has done so before.

Even here, on appeal, the Commonwealth does not explain what supported the judge's finding, asserting without elaboration only that the "weight and credibility of testimony are functions of [the] motion judge, and factual findings will stand absent clear error."

The support for the judge's finding that the informant had provided tips in the past was limited to quoting Sergeant West's testimony that the informant had more than once provided "information" leading to arrests and seizures of drugs and money, and drawing the following inadequately-supported inference therefrom: "I understand this testimony to mean that the CI supplied substantive information as well as helping with controlled buys, which he also did, and I so find."